IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| GARY GAYLOR, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. |
| : | 2:11-CV-288-RWS |
| GEORGIA DEPARTMENT OF : | |
| NATURAL RESOURCES, *et al.*, : | |
| : | |
| Defendants. : | |
| : | |

## **ORDER**

This case comes before the Court on Defendants' Motion to Dismiss [8]. After a review of the record, the Court enters the following order.

Plaintiff Gary Gaylor is a resident of White County, Georgia who was diagnosed with multiple sclerosis ("MS") in 2005.[1] As a result of his MS, Plaintiff's ability to walk is impaired, and he requires the use of a cane or wheelchair to ambulate.

Defendants Georgia Department of Natural Resources, the Georgia Department of Natural Resources' Parks, Recreation, and Historic Sites Division, and Director Becky Kelley own, operate, and/or administer Unicoi

---

[1] Unless otherwise stated, the following facts are drawn from the Complaint [1].

AO 72A
(Rev.8/82)

State Park and Lodge ("Unicoi") and Vogel State Park ("Vogel"). Plaintiff has visited these properties and plans on visiting them again. However, Plaintiff alleges that during his visits he has faced difficulties accessing the goods, services, programs, and activities within the parks due to architectural barriers, and he fears that he will continue to face these barriers in the future. Specifically, Plaintiff alleges the following access barriers:

### Unicoi State Park and Lodge

   A. Inaccessible parking due to excessive slopes, lack of proper access aisles, inadequate dimensions and cracked pavement;

   B. inaccessible paths of travel due to excessive slopes, abrupt changes in level and lack of proper handrails;

   C. inaccessible curb cuts due to presence of lips and excessive slopes;

   D. inaccessible ramps due to lack of proper handrails and excessive slopes;

   E. inaccessible restrooms due to lack of accessible routes to enter the restrooms; and

   F. inaccessible picnic table and seating areas due to lack of accessible route and inaccessible table dimensions; and

   G. inaccessible primary function areas such as beaches and trails which cannot be safely accessed by a person with a mobility impairment.

**Vogel State Park**

A. Inaccessible parking due to lack of proper access aisles, improper dimensions, excessive slopes and cracked pavement;

B. inaccessible paths of travel due to excessive slopes and lack of proper handrails;

C. inaccessible primary function areas such as lakeside activities and seating which can only be accessed via stairs and which lack accessible routes, ramps and handrails;

D. inaccessible restrooms throughout the park due to lack of proper door hardware and flush valves on incorrect side; and

E. inaccessible ramps due to excessive slopes and lack of proper handrails.

Plaintiff has filed this suit under Title II of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"), asking this Court to declare that the State's parks are inaccessible in violation of those acts, to find that the State has discriminated against him because of his disability, and to enjoin the State from continuing its discriminatory practices and to make relevant improvements to remedy its violations. The Defendants have now filed a motion to dismiss, arguing that Plaintiff's claims are barred by the Eleventh Amendment, Plaintiff has failed to plausibly state violations of the ADA and

RA, and, alternatively, request a more definite statement of Plaintiff's claims. The Court will consider each claim in turn.

### A. Eleventh Amendment

Defendants first argue that Plaintiff's ADA and RA claims are barred by the Eleventh Amendment. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI.  Eleventh Amendment immunity extends to state agencies and departments, Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984), as well as any state official sued in his official capacity. Brandon v. Holt, 469 U.S. 464, 472-73 (1985); Jackson v. Ga. Dep't of Transp., 16 F.3d 1573, 1577 (11th Cir. 1994).  Thus, neither a state nor its agencies, departments, or officials are subject to suit unless: (1) the State unequivocally consents to suit or (2) Congress has clearly expressed intent to abrogate a State's Eleventh Amendment immunity with respect to rights protected by the Fourteenth Amendment. Pennhurst, 465 U.S. at 99. Plaintiff alleges that Congress has validly abrogated the Defendants' immunity under the ADA, and that

4

Defendants have waived their immunity via their receipt of federal funds under the RA. The Court considers each statute in turn.

### 1. ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Congress defined a "public entity" as "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1). Thus, Defendants are subject to Title II of the ADA.

In enacting the ADA, Congress noted that "physical or mental disabilities in no way diminish a person's right to fully participate in all aspects of society," but "society has tended to isolate and segregate individuals with disabilities" and has "discriminated against [these] individuals . . . in such critical areas as employment, housing, public accommodation, education, transportation, communication, <u>recreation</u>, institutionalization, health services, voting, and access to services." 42 U.S.C. § 12101(a)(1)-(3) (emphasis added). Therefore,

Congress declared its purpose was "to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce"[2] in enacting the statute and preventing disability discrimination. 42 U.S.C. § 12101(b)(4). To that end, Congress expressly abrogated Georgia's immunity under the ADA. See 42 U.S.C. § 12202 (ADA[3]). Thus, the Court must determine whether Congress' abrogation was taken pursuant to a "valid grant of constitutional authority." Tennessee v. Lane, 541 U.S. 509, 517 (2004).

Section 5 of the Fourteenth Amendment allows Congress to abrogate a State's sovereign immunity when it does so to enforce the substantive

---

[2]The Commerce Clause does not provide sovereign-immunity abrogation as the Supreme Court has ruled that Article I "cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 73 (1996).

[3]The ADA was amended effective January 1, 2009 by the ADA Amendments Act ("ADAAA"). See ADAAA, PUB. L. NO. 110-325, 122 Stat. 3553 (stating that the ADAAA is effective as of Jan. 1, 2009). Because Plaintiff does not state when he attended the parks or any other relevant dates, the Court does not know whether he asserts his disability claim under the original ADA or as amended. However, because the ADA's statute of limitations in Georgia is two years, Griffith v. Metropolitian Atlanta Rapid Transit Authority, 435 F. App'x 830, 831 (11th Cir. 2001), the Court will assume for Eleventh Amendment analysis purposes here that the Plaintiff first attended the parks and learned of the State's discriminatory practices sometime after October 18, 2009 and the ADAAA applies. Otherwise, Plaintiff's claim would be barred and the analysis under the pre-ADAAA ADA would ultimately be irrelevant.

AO 72A
(Rev.8/82)

guarantees of that Amendment. Id. at 518. This power "includes the authority to both remedy and to deter violation of rights guaranteed by the Fourteenth Amendment by prohibiting a somewhat broader swath of conduct, including that which is not itself forbidden by the Amendment's text." Id. (quoting Kimel v. Bd. of Regents, 528 U.S. 62, 81 (2000)) (internal quotations and alterations omitted). "In other words, Congress may enact so-called prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct." Nevada Dep't of Human Res. v. Hibbs, 538 U.S. 721, 727-28 (2003). But, Congress' § 5 power is not absolute; rather, the Supreme Court has ruled that such legislation is only valid if it exhibits "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." City of Boerne v. Flores, 521 U.S. 507, 520 (1997).

In the Eleventh Circuit, the court applies a three-step analysis to determine whether legislation satisfies the Boerne "congruence and proportionality" test.

> Under this analysis, [the district court] must determine: (1) the constitutional right or rights that Congress sought to enforce when it enacted the ADA, (2) whether there was a history of unconstitutional discrimination to support Congress's

7

determination that prophylactic legislation was necessary; and (3) whether Title II is an appropriate response to this history and pattern of unequal treatment.

Assoc. for Disabled Ams., Inc. v. Florida Int'l Univ., 405 F.3d 954, 957 (11th Cir. 2005) [ hereinafter "FIU"] (citing Bd. of Trustees v. Garrett, 531 U.S. 356, 365-70 (2001)). Additionally, the Court is to consider the harm to be prevented on a "claim-by-claim basis." United States v. Georgia, 546 U.S. 151 (2006). Therefore, here, the Court must determine whether Title II of the ADA is congruent and proportional to the discrimination faced by disabled persons in the parks and recreation context. With that background in mind, the Court will consider each prong in turn.

### 1. The Right to Be Enforced.

As the Supreme Court noted in Lane, Title II–like Title I–was enacted to enforce the Equal Protection Clause's prohibition on "irrational disability discrimination." Lane, 541 U.S. at 522. Plaintiff argues that because Congress was enforcing the Equal Protection Clause when it sought to remove barriers for disabled persons accessing parks and recreation facilities, Congress was enforcing a substantive Fourteenth Amendment right when it abrogated the State's immunity.

Defendants argue, however, that after the Supreme Court's decision in Georgia, Title II is only abrogated "insofar as the conduct at issue *actually* violates the Constitution." Dkt. No. [8-1] at 10. Defendants never state why the conduct here does not violate the Constitution, but it appears that their argument is that there is no separate constitutional right to "access parks and recreation facilities"; thus, because there is not a "right to access parks," Congress cannot prescribe a remedy that applies to the State. See Dkt. No. [8] at 10-12; Dkt. No. [21] at 7 (distinguishing Lane and FIU as cases involving constitutional rights coupled with disability discrimination).

However, Defendants overstate the holding in Georgia. In Georgia, the Supreme Court was asked to decide whether a disabled state prisoner could sue Georgia under Title II of the ADA. 546 U.S. at 153. The *pro se* prisoner alleged, *inter alia*, that he was wheelchair bound, that he was confined in his cell for 23-24 hours a day without the ability to turn his wheelchair around, that he did not have accessible showers and toilets, and that he had been left on several occasions to sit in his own feces and urine while the prison refused to clean up the waste. Id. at 154-55. The district court found that his Title II claims

9

were barred by the Eleventh Amendment, and the Eleventh Circuit affirmed. Id. at 155-56.

The Supreme Court first found that a large part of the prisoner's claims were based on conduct that not only violated Title II but also independently violated § 1 of the Fourteenth Amendment, such as the Eighth Amendment as incorporated by the Due Process Clause. Id. at 157. The Court went on to state:

> While the Members of this Court have disagreed regarding the scope of Congress's "prophylactic" enforcement powers under § 5 of the Fourteenth Amendment, no one doubts that § 5 grants Congress the power to enforce the provisions of the Amendment by creating private remedies against the States for *actual* violations of those provisions. Section 5 authorizes Congress to create a cause of action through which the citizen may vindicate his Fourteenth Amendment rights. This enforcement power includes the power to abrogate state sovereign immunity by authorizing private suits for damages against the States. Thus, insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity. The Eleventh Circuit erred in dismissing those of Goodman's Title II claims that were based on such unconstitutional conduct.

Id. at 158-59 (internal quotations, citations, and alterations omitted) (emphasis in original). However, because the *pro se* prisoner's complaint was unclear and because he also alleged conduct which did not appear to violate the ADA or the Constitution, the Supreme Court remanded the action to the district court and

10

allowed the prisoner to amend to specifically state the conduct that underlay his Title II claims. The Supreme Court noted that the plaintiff had alleged clearly frivolous violations outside of his constitutional ones, such as demanding a "steam table" for his housing unit, and that conduct would not have violated Title II or, separately, the Constitution. In its remand instructions, the Court stated the following:

> Once Goodman's complaint is amended, the lower courts will be best situated to determine in the first instance, on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

Id. at 159.

First, the Court finds that irrationally preventing disabled persons from accessing state-owned parks and recreation facilities would independently violate both the Fourteenth Amendment–the Equal Protection Clause–and Title II. See Garrett, 531 U.S. at 366-67 (finding that legislation affecting disabled persons receives rational-basis review under the Equal Protection Clause); 42 U.S.C. § 12132 (preventing discrimination in state services, programs, and

activities). Thus, on its face, Georgia's mandate is satisfied as the alleged conduct violates both Title II and, independently, the Fourteenth Amendment.

But, even if the conduct itself does not also implicate a separate, fundamental right, the Court does not find that Georgia requires it. In its remand instructions, the Court noted that the district court could properly find that Congress abrogated immunity for conduct which violated Title II but did not independently violate the Fourteenth Amendment. Thus, the Court left open whether conduct which does not violate the Fourteenth Amendment could still be properly prosecuted against the States if it violated Title II.

But, at bottom, irrational disability discrimination is all that is necessary to come within the auspices of Congress' § 5 powers. Protection from that evil is explicitly found in § 1 of the Fourteenth Amendment–the Equal Protection Clause–and Congress' purpose in enacting Title II was to prevent that discrimination in parks and recreation facilities. See 42 U.S.C. § 12101(a)(3). Therefore, the Court finds that Congress' right to be vindicated–irrational disability discrimination in state parks and recreation facilities–passes the first prong of Boerne's inquiry.

12

2. History of Unconstitutional Discrimination.

Defendants next argue that Congress' abrogation was improper because Congress did not find a history of unconstitutional discrimination in the parks and recreation areas. Plaintiff first argues that "the Court need not analyze the second *Beorne/FIU* factor but like other district courts may adopt the Supreme Court's reasoning in Lane." Dkt. No. [19] at 16. In support of that argument, Plaintiff points to the Eleventh Circuit's opinion in FIU. In FIU, the Eleventh Circuit sought to determine whether Congress abrogated the State's immunity under Title II as applied in the public education context. Regarding the second prong, the Circuit found the following:

> The *Lane* Court, in analyzing the second prong of the *Boerne* congruence and proportionality test, specifically noted that Congress "document[ed] a pattern of unequal treatment in the administration of a wide range of public services, programs and activities, including the penal system, *public education*, and voting." Lane, 124 S. Ct. at 1989 (emphasis added). Under its analysis of this prong, the Supreme Court considered the record supporting Title II *as a whole*, and conclusively held that Congress had documented a sufficient historical predicate of unconstitutional disability discrimination in the provision of public services to justify enactment of a prophylactic remedy pursuant to Congress's authority under Section 5 of the Fourteenth Amendment. Id. at 1992. Therefore, the Supreme Court ruled that the second *Boerne* inquiry was satisfied. Id.; see also, Miller v. King, 384 F.3d 1248, 1271 n.25 (11th Cir.2004) ("the Supreme Court in Lane in effect has decided the step-two inquiry as to Title II, and we must follow

13

> the Supreme Court's lead."). Thus, the second *Boerne* inquiry is satisfied in this case.

FIU, 405 F.3d at 958 (emphasis in the original). Plaintiff argues that based on this language, the Supreme Court has *per se* determined that the second prong is satisfied in any Title II context.

However, the Defendant argues that FIU[4] should not be read so broadly and that Plaintiff is required to look at the evidence in the as-applied context. However, Defendants cite no authority for the proposition that courts after Lane are required to conduct their own historical discrimination analysis for Title II claims. As well, because the Eleventh Circuit has twice construed Lane as foreclosing this prong's analysis due to the overwhelming nature of disability discrimination in the public fora and the fact that the Supreme Court reviewed

---

[4]The Court also notes that in FIU the Circuit partially relied upon a footnote in Miller v. King, 384 F.3d 1248, 1271 n.25 (11th Cir. 2004) [hereinafter "Miller I"] which stated that "the Supreme Court in *Lane* in effect has decided the step-two inquiry as to Title II, and we must follow the Supreme Court's lead." However, after FIU was published, Miller I was vacated in light of the Supreme Court's decision in Georgia that the Eleventh Amendment analysis must be done on a "claim-by-claim" basis. Miller v. King, 449 F.3d 1149 (11th Cir. 2006) [hereinafter "Miller II"]. Thus, Miller I is no longer good law. However, Miller II vacated Miller I because it was unable to determine whether the first prong was established under Georgia, not the second prong as in here, and the Circuit could not complete a proper Eleventh Amendment analysis without the plaintiff first amending his confused complaint. Thus, the Court is undeterred by the FIU court's reliance on this statement as the vacating court did not reach these grounds.

14

the record "as a whole," the Court finds that at this stage and on this evidence, Plaintiff has alleged a sufficient factual basis to support this prong. See Lane, 541 U.S. at 529 ("The conclusion that Congress drew from this body of evidence is set forth in the text of the ADA itself: '[D]iscrimination against individuals with disabilities persists in such critical areas as ... education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services.' 42 U.S.C. § 12101(a)(3). This finding, together with the extensive record of disability discrimination that underlies it, makes clear beyond peradventure that inadequate provision of public services and access to public facilities was an appropriate subject for prophylactic legislation.") (emphasis omitted).

### 3. Whether Title II is an appropriate response.

Defendants argue that Title II is not an appropriate response as the implementing regulations exceed Title II's statutory authority and that Plaintiff cannot use the implementing regulations as a private right of action. However, Plaintiff maintains he is not suing under the regulations as a distinct claim, rather he is suing under the statute. And, as seen in FIU, the court looks to the regulations to determine whether the statute is appropriate as those regulations

15

were taken subject to the statute's authority. See FIU, 405 F.3d at 959 & n.5 (looking to Title II's regulations to determine whether the statute is an appropriate response); see also Lane, 541 U.S. at 532 (looking to the regulations to determine if Title II is an appropriate response). Though the Court finds that Plaintiff is not attempting to assert a private right of action in the regulations, he has alleged the violations of a number of regulations in support of his cause of action. The regulations have been amended since the parties briefed this matter. See DOJ, Amendment of Title II and Title III Regulations, *available at* http://www.ada.gov/regs2010/ADAregs2010.htm (stating that the regulations went in force March 12, 2012). Because it is not clear what regulations, or editions thereof, are at issue here, the Court will **GRANT** Defendants' Motion for More Definite Statement and allow Plaintiff the opportunity to plead which regulations apply to these claims and to set out with sufficient specificity what architectural barriers exist[5]. In its current state, Plaintiff's complaint is too general for the Court to determine whether Title II is an appropriate response.[6]

---

[5] Defendant asserts that Plaintiff has failed to allege facts that are critical to the analysis of his claim. The Court agrees and orders Plaintiff to allege specific facts that he contends support his claim.

[6] However, the Court is mindful that discovery has not yet occurred in this case and will hold the Plaintiff to the appropriate pleading standard. Nonetheless, the

**B. RA**

Defendants next argue that the Court does not have subject matter jurisdiction over Plaintiff's RA claim because Plaintiff has not set out with sufficient factual detail which federal funds the Defendants have accepted, and the receipt of federal funds is critical to waiver of their Eleventh Amendment immunity. See 42 U.S.C. § 2000d-7 ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 . . . or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance."); Garrett v. University of Ala. at Birmingham, 344 F.3d 1288, 1293 (11th Cir. 2003) ("Section 2000d-7 unambiguously conditions the receipt of federal funds on a waiver of Eleventh Amendment immunity to claims under section 504 of the Rehabilitation Act. By continuing to accept federal funds, the state agencies have waived their immunity."). However, Plaintiff has plead that "[u]pon reasonable belief, the Defendants[] are the recipient of [f]ederal [f]unds." Cmpl., Dkt. No. [1] at ¶ 32. Because what funds the Defendants have received are facts within Defendants'

---

current complaint does not have the requisite specificity for the Court or Defendants to determine if it states a claim under the appropriate regulations.

17

control, the Court finds that Plaintiff has plead a sufficient factual basis for Eleventh Amendment waiver as to the RA claim. However, should discovery prove that federal funds were not received, Defendants may move for summary judgment on this ground at any time.[7]

### C. Conclusion

Defendants' Motion [8] is **GRANTED, in part**. Specifically, Plaintiff shall file an amended complaint within 21 days of this Order which specifies which regulations were violated by Defendants' conduct and provides sufficient specificity for the Court to determine whether Plaintiff's claims are plausibly plead. On all other issues, the Court will **DENY** the motion with the right to refile. Following the filing of Plaintiff's amended complaint, Defendants may refile, within 14 days, their motion addressing the remaining Eleventh Amendment challenge to Title II (congruence and proportionality), Eleventh

---

[7]Notably, Defendants have not made a factual challenge to this Court's jurisdiction by arguing or demonstrating that they do not receive federal funds. Rather, their argument is that Plaintiff has not properly plead which federal funds they receive. Because discovery has not occurred, the Court finds that Defendants arguments are premature since Plaintiff has not had the opportunity to conduct discovery on this matter. As Plaintiff has alleged that Defendants receive federal funds, this allegation is sufficient in a facial jurisdictional challenge.

Amendment challenges under the Ex Parte Young exceptions, and whether Plaintiff's newly plead claims state a claim.

**SO ORDERED**, this   15th   day of August, 2012.


_____
**RICHARD W. STORY**
United States District Judge