UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

GARY GAYLOR,                          :
                                      :
        Plaintiff,                    :
                                      :           CIVIL ACTION NO.
v.                                    :
                                      :           2:11-CV-288-RWS
GEORGIA DEPARTMENT OF                 :
NATURAL RESOURCES, et al.,            :
                                      :
        Defendants.                   :

**ORDER**

This action is before the Court on Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [25]. For the following reasons, the Court denies the motion.

Background

On October 18, 2011, Plaintiff Gary Gaylor filed this action against the Georgia Department of Natural Resources ("GDNR"); GDNR's Parks, Recreation, and Historic Sites Division ("PRHSD"); and Becky Kelley, in her official capacity as the Director of PRHSD. Plaintiff asserted claims for alleged disability discrimination in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., and Section 504 of the

Rehabilitation Act ("RA"), 29 U.S.C. § 794.  Plaintiff alleged that he suffers from multiple sclerosis, which impairs his ability to walk and requires him to use a cane or a wheelchair.  Plaintiff further alleged that Defendants own, operate, and/or administer Unicoi State Park and Lodge and Vogel State Park (the "Parks"), and that he had visited the Parks and planned on visiting them in the future, but that during his visits he had faced difficulties accessing the goods, services, programs, and activities within the Parks due to architectural barriers, and that he feared he would continue to face these barriers in the future.  Plaintiff sought a declaration that the Parks are inaccessible in violation of the ADA and RA, and that Defendants have discriminated against him because of his disability.  Plaintiff sought to enjoin Defendants from continuing their discriminatory practices and to require them to make relevant improvements in the parks to remedy the alleged violations.  Plaintiff also sought an award of compensatory damages, as well as recovery of his attorney's fees and expenses of litigation.

Defendants moved to dismiss or, in the alternative, for a more definite statement [8].  Defendants argued that (1) Plaintiff's claims were barred by Eleventh Amendment immunity, (2) Plaintiff did not have a direct cause of action to enforce the statutes' implementing regulations, (3) the complaint

2

failed to state sufficient facts to state a claim under the ADA or RA, and (4) Plaintiff was not entitled to the injunctive relief he sought. Alternatively, Defendants argued that Plaintiff should be required to provide a more definite statement to provide the specific facts that made up his claim.

On August 15, 2012, the Court issued an Order granting Defendants' motion in part. With regard to Eleventh Amendment immunity, the Court held that Plaintiff had adequately pled waiver of immunity as to his RA claims based on Defendants' receipt of federal funds. Order [23] at 17-18. As to Plaintiff's ADA claims, the Court followed the three-step analysis set out in Ass'n for Disabled Veterans v. Fla. Int'l Univ., 405 F.3d 954, 957 (11th Cir. 2005) [hereinafter "FIU"], to determine whether Congress had validly abrogated the state's Eleventh Amendment immunity in accordance with the Supreme Court's decision in City of Boerne v. Flores, 521 U.S. 507 (1997).[1]

---

[1] In Boerne, the Supreme Court held that legislation abrogating Eleventh Amendment immunity is a valid exercise of Congress's authority under Section 5 of the Fourteenth Amendment if it exhibits "a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." 521 U.S. at 519-20. In FIU, the Eleventh Circuit followed a three-step analysis to determine whether Congress's enactment of Title II of the ADA satisfied this requirement in the context of a public education institution:

> [W]e must determine: (1) the constitutional right or rights that
> Congress sought to enforce when it enacted the ADA, (2) whether
> (continued...)

AO 72A
(Rev.8/82)

The Court held that Title II of the ADA, as applied to the discrimination faced by disabled persons in the parks and recreation context, satisfied the first two steps of the <u>Boerne</u> analysis.  First, the Court found that the constitutional right Congress sought to enforce in Title II was the right of disabled persons to be free of irrational discrimination in accessing state parks and recreation facilities, a right explicitly protected by the Equal Protection Clause of the Fourteenth Amendment.  Order [23] at 11-12.  Second, the Court found that Congress had documented a sufficient history of unconstitutional disability discrimination in the provision of public services to justify enactment of Title II.  <u>Id.</u> at 14-15.

Turning to the third step of the analysis, the Court held that it must look to the applicable regulations to determine whether Title II was an appropriate response to this history and pattern of unequal treatment.  Although the Court found that Plaintiff was not attempting to assert a private right of action in the regulations, it noted that Plaintiff had alleged

---

[1](...continued)
there was a history of unconstitutional discrimination to support Congress's determination that prophylactic legislation was necessary; and (3) whether Title II is an appropriate response to this history and pattern of unequal treatment.

405 F.3d at 957.

4

the violation of a number of regulations in support of his cause of action. However, because it was not clear what regulations, or editions thereof, were at issue, the Court concluded that Plaintiff's complaint was too general for it to determine whether Title II was an appropriate response. The Court also agreed with Defendants' assertion that Plaintiff had failed to allege facts that were critical to the analysis of his claims. Id. at 16 & n.5.

Therefore, the Court granted Defendants' motion for more definite statement and ordered Plaintiff to file an amended complaint specifying which regulations were violated by Defendants' conduct and providing sufficient specificity for the Court to determine whether Plaintiff's claims had been plausibly pled. On all other issues, the Court denied Defendants' motion with the right to refile. Id. at 18.

On September 6, 2012, Plaintiff filed his First Amended Complaint [24]. On September 24, 2012, Defendants filed a motion to dismiss Plaintiff's First Amended Complaint [25]. Defendants argue that (1) the Eleventh Amendment bars Plaintiff's ADA claims because Title II is not a proportionate means to remedy irrational disability discrimination in state-

5

owned parks;[2] (2) Plaintiff does not have a direct cause of action to enforce the statutes' implementing regulations; (3) if the implementing regulations are found to create a private cause of action, then they exceed the authority of the statutes; (4) the complaint fails to allege sufficient facts to state a claim on which relief can be granted; and (5) Plaintiff is not entitled to the injunctive relief he seeks.

Plaintiff has filed a response to Defendants' motion [27], and Defendants have filed a reply [29]. In addition, on November 2, 2012, the United States intervened in this action as of right pursuant to 28 U.S.C. § 2403(a).[3] The United States has filed a brief as intervenor and amicus curiae in opposition to Defendants' motion to dismiss [34], and Defendants have filed a response [38].

---

[2] With regard to Plaintiff's RA claims, Defendants state that after gathering evidence to factually challenge waiver of Eleventh Amendment immunity based on the state's receipt of federal funds, they intend to file a motion for summary judgment on this issue. No such motion has been filed to date.

[3] Title 28 U.S.C. § 2403(a) provides in pertinent part as follows:

In any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court . . . shall permit the United States to intervene . . . for argument on the question of constitutionality.

6

<u>Discussion</u>

I.    Eleventh Amendment Immunity

As noted above, the Court previously left open the question whether Title II of the ADA validly abrogates the state's Eleventh Amendment immunity.  In its brief in opposition to Defendants' motion to dismiss, the United States argues that the Court need not and should not decide this question.  The United States points out that in its previous Order the Court held that Plaintiff had adequately alleged waiver of Eleventh Amendment immunity as to his RA claims based on Defendants' receipt of federal funding. Since Defendants' obligations are the same under both statutes, the United States argues, "so long as the plaintiff maintains a live Section 504 claim, the constitutionality of Title II is a purely academic question that should not be decided."  United States' Br. in Opp'n to Mot. to Dismiss [34] at 5.  After further consideration, the Court agrees and therefore declines to decide the abrogation issue at this time.

The Fifth Circuit's decision in <u>Bennet-Nelson v. La. Bd. of Regents</u>, 431 F.3d 448 (5th Cir. 2005), is instructive on this point.  In that case, two hearing impaired students sued under Title II of the ADA and § 504 of the RA alleging that Louisiana Tech University denied them equal access to

7

education by failing to provide certain educational aids and services.  Id. at 449.  The district court dismissed the suit based on Eleventh Amendment immunity.  Id.  On appeal, the plaintiffs argued that the University had waived its immunity from suit under § 504 by accepting federal funding, and that Congress had validly abrogated Eleventh Amendment immunity from suit under Title II of the ADA.  Id.  Addressing the first argument, the court found that the University had waived its Eleventh Amendment immunity as to the plaintiffs' claims under § 504 because it was a recipient of federal financial assistance.  Id. at 454.  Turning to Title II, the court noted that the only material difference between the rights and remedies afforded plaintiffs under that statute and § 504 lay in their respective causation requirements, but that this difference was immaterial where the plaintiffs' claims were based on a failure to make reasonable accommodations for disabled individuals.  Id.  "Thus," the court concluded, "having already held that sovereign immunity does not bar the appellants' claim under § 504, we need not address at this juncture the issue of abrogation under Title II of the ADA, because the rights and remedies under either are the same for purposes of this case."  Id. at 455.

8

Similarly, in this case, the Court has held that Plaintiff's claims under § 504 may proceed based on the allegation that Defendants waived their Eleventh Amendment immunity by accepting federal financial assistance. Likewise, since Plaintiff is challenging architectural barriers in the Parks, the rights and remedies available under § 504 and Title II are the same for purposes of this case. See Pace v. Bogalusa City Sch. Bd., 403 F.3d 272, 288-89 (5th Cir. 2005) (no material difference between § 504 and Title II where plaintiff's challenge was to architectural barriers). Therefore, unless and until Defendants present evidence establishing that the programs alleged to violate § 504 have not received federal financial assistance, the Court need not address the issue of abrogation under Title II of the ADA.

Defendants argue that the Court should decide the abrogation issue now because they intend to file a motion for summary judgment challenging waiver under § 504 based on a lack of federal funding. However, it would be inappropriate for the Court to address this constitutional issue at the present time based solely on the hypothetical possibility that Plaintiff's § 504 claims might be dismissed at some later date. This is particularly true given that nearly a year after Defendants stated they were "in the process of gathering the evidentiary support necessary to factually challenge jurisdiction under

the RA and intend to file a motion for summary judgment on this issue shortly," no such motion has been filed.  Defs.' Mem. of Law in Supp. of Mot. to Dismiss Pl.'s First Am. Compl. [25-1] at 6 n.3.  If and when Defendants do successfully challenge their alleged waiver of immunity under § 504, the Court can then address whether Congress validly abrogated the state's immunity under Title II of the ADA.

II.    Private Right of Action

Defendants contend that Plaintiff's claims are based solely on alleged violations of the statutes' implementing regulations, rather than the statutes themselves, and that there is no private right of action to enforce the regulations.  As noted above, the Court has already found that Plaintiff is not attempting to assert a private right of action in the regulations.  In any event, Defendants' argument is without merit.

Defendants rely on the Supreme Court's decision in Alexander v. Sandoval, 532 U.S. 275 (2001).  In Sandoval, the Supreme Court held that disparate-impact regulations promulgated under Title VI of the Civil Rights Act of 1964 did not create a private right of action because the section of the statute authorizing private lawsuits prohibited only intentional discrimination.  532 U.S. at 285.  In reaching this conclusion, however, the

Court noted that regulations applying the ban on intentional discrimination *would* be covered by the private right of action created to enforce that ban:

> Such regulations, if valid and reasonable, authoritatively construe the statute itself, and it is therefore meaningless to talk about a separate cause of action to enforce the regulations apart from the statute.  A Congress that intends the statute to be enforced through a private cause of action intends the authoritative interpretation of the statute to be so enforced as well.

Id. at 284.  Thus, Sandoval teaches that where a statute creates a private right of action and authorizes the issuance of implementing regulations, valid and reasonable regulations construing the statute are equally as enforceable through a private cause of action as the statute itself.[4]

---

[4] Defendants also cite several lower court decisions purportedly holding that there is no private right of action to enforce Title II's and Section 504's implementing regulations.  These cases, however, are all distinguishable because they involved regulations that were either purely administrative in nature or otherwise did not directly protect the personal rights of individuals with disabilities.  See Abrahams v. MTA Long Island Bus, 644 F.3d 110, 119-20 (2d Cir. 2011) (regulation requiring creation of mechanism for ongoing public participation in development and assessment of services for disabled individuals not privately enforceable); Lonberg v. City of Riverside, 571 F.3d 846, 851-52 (9th Cir. 2009) (regulation requiring transition plan for making necessary structural changes not privately enforceable); Ability Ctr. of Toledo v. City of Sandusky, 385 F.3d 901, 914 (6th Cir. 2004) (same); Three Rivers Ctr. for Indep. Living, Inc. v. Housing Auth. of the City of Pittsburgh, 382 F.3d 412, 430 (3d Cir. 2004) (regulation requiring public housing authorities to make certain percentage of units accessible not privately enforceable); Brennan v. Reg'l Sch. Dist. No. 1 Bd. of Educ., 531 F. Supp. 2d 245, 278 (D. Conn. 2007) (regulation requiring establishment of grievance procedures not privately enforceable).  Defendants' reliance on the Eleventh
(continued...)

Both Title II and § 504 "are enforceable through private causes of action." <u>Barnes v. Gorman</u>, 536 U.S. 181, 185 (2002).  Both statutes also require the promulgation of implementing regulations.  42 U.S.C. § 12134; 29 U.S.C. § 794(a).  Therefore, insofar as those regulations validly and reasonably construe and implement the statutory mandate, they are enforceable in a private cause of action along with the statutes themselves.

III.   Enforceability of Regulations

Defendants argue that the implementing regulations are unenforceable because they impose obligations that exceed the anti-discrimination mandates of the statutes themselves.  Specifically, Defendants argue that insofar as the regulations require public entities to make "reasonable modifications" to avoid discrimination, they exceed the statutory mandate because Title II of the ADA, unlike Titles I and III, does not expressly require public entities to make reasonable accommodations for disabled individuals.  Defs.' Mem. of Law in Supp. of Mot. to Dismiss Pl.'s First Am. Compl. [25-1]

---

[4](...continued)
Circuit's opinion in <u>Am. Ass'n of People with Disabilities v. Harris</u>, 605 F.3d 1124 (11th Cir. 2010), is also misplaced because that opinion was subsequently vacated and replaced with a new opinion that provides no support for Defendants' position. <u>Am. Ass'n of People with Disabilities v. Harris</u>, 647 F.3d 1093 (11th Cir. 2011).

at 18 (quoting <u>Bircoll v. Miami-Dade Cnty.</u>, 480 F.3d 1072, 1081-82 (11th Cir. 2007)) (quoting 28 C.F.R. § 35.130(b)(7)).

In <u>Bircoll</u>, the court noted that, in the statutory text, Title I of the ADA states that discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," 42 U.S.C. § 12112(b)(5)(A); and Title III states that discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures." 42 U.S.C. § 12182(b)(2)(A)(ii). 480 F.3d at 1082 n.13. Although "[t]here is no similar statutory language in Title II," the court observed, "the DOJ regulations for Title II impose the requirement of 'reasonable modifications' to procedures to avoid the discrimination prohibited by Title II." <u>Id.</u>  Noting that there was no claim in that case that the Title II regulations went beyond the statutory authority, the court interpreted and applied the regulations "with the caveat that we do not here determine their validity." <u>Id.</u>; <u>see also</u> <u>Olmstead v. L.C. ex rel. Zimring</u>, 527 U.S. 581, 592 (1999) (same).

Even though <u>Bircoll</u> and <u>Olmstead</u> left open the question of the validity Title II's "reasonable modifications" regulation, the text of the statute itself clearly indicates that Title II includes a reasonable accommodation

13

requirement, and that the "reasonable modifications" regulation is therefore within the scope of the statutory mandate.  In its statement of findings applicable to the ADA as a whole, Congress specifically found that "individuals with disabilities continually encounter various forms of discrimination, including . . . the discriminatory effects of architectural, transportation, and communication barriers . . . [and] *failure to make modifications to existing facilities and practices*."  42 U.S.C. § 12101(a)(5) (emphasis added).   Title II, in turn, prohibits discrimination against any "qualified individual with a disability," 42 U.S.C. § 12132, which is defined as

> an individual with a disability who, *with or without reasonable modifications to rules, policies, or practices*, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2) (emphasis added).

In accordance with this statutory language, the Supreme Court has stated that Title II imposes an "obligation to accommodate," or a "reasonable modification requirement." Tennessee v. Lane, 541 U.S. 509, 532-33 (2004).

14

Explaining the scope of this requirement, the Supreme Court reviewed Title II's implementing regulations with approval:

> As Title II's implementing regulations make clear, the reasonable modification requirement can be satisfied in a number of ways. In the case of facilities built or altered after 1992, the regulations require compliance with specific architectural standards. 28 C.F.R. § 35.151 (2003). But in the case of older facilities, for which structural change is likely to be more difficult, a public entity may comply with Title II by adopting a variety of less costly measures, including relocating services to alternative, accessible sites and assigning aides to assist persons with disabilities in accessing services. § 35.150(b)(1).

Id. at 532. Following Lane, other courts have specifically held that "DOJ's regulations governing new and altered facilities are congruous with Title II's reasonable modification requirement" and upheld a private right of action to enforce the regulations. Frame v. City of Arlington, 657 F.3d 215, 231 (5th Cir. 2011); accord Ability Ctr., 385 F.3d at 907 (finding that "28 C.F.R. § 35.151 effectuates a mandate of Title II and is therefore enforceable through the private cause of action available under the statute"). It is no less clear that Title II's "reasonable modifications" regulation imposes requirements specifically envisioned by the statute and is therefore enforceable through a private cause of action. See Mary Jo C. v. N.Y. State & Local Retirement Sys., 707 F.3d 144, 153 n.2 (2d Cir. 2013) (noting that "28 C.F.R. §

15

35.130(b)(7) was intended to implement 42 U.S.C. § 12131(2)") (quoting Hargrave v. Vermont, 340 F.3d 27, 38 (2d Cir. 2003)).

Defendants also argue that the regulations are unenforceable because the specific architectural standards they contain are not set out in the statute, so the regulations effectively prohibit what the statute permits. Defs.' Resp. to Br. of Intervenor and Amicus Curiae in Opp'n to Mot. to Dismiss [38] at 25. Congress, however, expressly mandated that Title II's implementing regulations include architectural and design standards to ensure accessibility to public buildings and facilities by individuals with disabilities. 42 U.S.C. §§ 12134(c) (regulations must "include standards . . . consistent with the minimum guidelines and requirements issued by the Architectural and Transportation Barriers Compliance Board [ATBCB]") and 12204(b) (ATBCB's guidelines must "ensure that buildings [and] facilities . . . are accessible, in terms of architecture and design, . . . to individuals with disabilities").

Such regulations are necessarily more detailed and specific than the statutory text. As the Eleventh Circuit has recognized, "Congress did not enumerate the specific forms of prohibited discrimination in [Title] II, but rather set out only a general prohibition . . . [and] direct[ed] the Attorney

16

General to issue regulations setting forth the forms of discrimination prohibited." Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1179 n.26 (11th Cir. 2003) (internal quotation marks omitted). These regulations are "entitled to controlling weight unless they are procedurally flawed, substantively arbitrary and capricious, or plainly contradict the statute." Id. at 1179. Defendants have pointed to no such flaws in the regulations at issue in this case. And, as discussed above, other courts have found that the Title II regulations and the architectural standards they incorporate are entirely consistent with and properly effectuate Title II's statutory mandate. Frame, 657 F.3d at 231; Ability Ctr., 385 F.3d at 907.

IV.    Sufficiency of Factual Allegations

Defendants contend that the First Amended Complaint lacks sufficient factual allegations to make out a claim under either the ADA or RA. While a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and citations omitted). Instead, the complaint must set forth factual allegations "plausibly suggesting (not merely consistent with)"

17

a violation of the law.  Id. at 557.  Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

The pleading requirements for a cause of action under Title II of the ADA and § 504 of the RA are essentially the same.  See Constantine v. Rectors & Visitors of George Mason Univ., 311 F.3d 474, 498 (4th Cir. 2005).[5] "In general, a plaintiff seeking recovery for violation of either statute must allege that (1) she has a disability, (2) she is otherwise qualified to receive the benefits of a public service, program, or activity, and (3) she was excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability." Id.

Defendants contend that Plaintiff has failed to state a claim because he does not allege that he was denied a public benefit but merely that his access to the Parks was "hindered" and "difficult."  Defs.' Mem. of Law in Supp. of Mot. to Dismiss First Am. Compl. [25-1] at 20 (quoting First Am. Compl. [24]

---

[5] As noted above, the only difference between the two statutes lies in their causation requirement, but this difference is immaterial where, as here, the plaintiff is challenging architectural barriers.  Pace, 403 F.3d at 288-89.

AO 72A
(Rev.8/82)

¶¶ 19, 26, 27).  However, Plaintiff need not allege that he was "completely prevented from enjoying a service, program, or activity." Shotz v. Cates, 256 F.3d 1077, 1080 (11th Cir. 2001).  It is enough if he alleges that "certain aspects" of the Parks make the services, programs, and activities offered there not "readily accessible" to disabled individuals. Id.  Plaintiff has satisfied this requirement in the First Amended Complaint by alleging a list of specific conditions that "hindered his access and caused him difficulty in utilizing the services at the [Parks]," including (1) inaccessible parking due to excessive slopes, lack of mounted signage, lack of proper access aisles, inadequate dimensions, and cracked pavement; (2) inaccessible paths of travel due to excessive slopes, abrupt changes in level, and lack of proper handrails; (3) inaccessible curb cuts due to the presence of vertical changes in level or "lips" and excessive slopes; (4) inaccessible ramps due to lack of proper handrails and excessive slopes; (5) inaccessible restrooms due to lack of accessible routes to enter the restrooms, lack of proper door hardware, lack of grab bars in water closets, and lack of flush valves on correct side; (6) inaccessible picnic and seating areas due to lack of accessible routes and inaccessible dimensions; and (7) inaccessible primary function areas such as beaches, trails, lakeside activities, guest services, theaters, and seating due

19

to lack of accessible routes, ramps, and proper handrails.  First Am. Compl. [24] ¶¶ 26-27.

Defendants' reliance on <u>Kornblau v. Dade Cnty.</u>, 86 F.3d 193 (11th Cir. 1996), is misplaced.  In that case, the Eleventh Circuit held that the plaintiff was not entitled to a parking space in a private employee parking lot closest to a government building because "nothing in the [ADA], its purpose, or the regulations can reasonably be read to give disabled parkers access to areas that would not be available to them if they were not disabled."  <u>Id.</u> at 194. <u>Kornblau</u> has no relevance to this case because Plaintiff is seeking access only to areas of the Parks that are open to members of the general public.

Defendants also rely on <u>Ross v. City of Gatlinburg</u>, 327 F. Supp. 2d 834 (E.D. Tenn. 2003), but that case is distinguishable.  In <u>Ross</u>, the district court held that the plaintiffs had failed to present any proof of harm in violation of Title II, and therefore lacked standing, where they merely alleged "difficulty" and "problems" with parking and navigating city streets.  327 F. Supp. 2d at 842.  However, the court based its holding on the plaintiffs' failure, "even in the face of a motion for summary judgment, [to] specify any particular street, sidewalk, intersection, parking lot, public building or facility that does not comply with the ADA."  <u>Id.</u>  The court distinguished cases where "plaintiffs

set forth detailed, specific itemizations of non-compliant buildings, facilities, and street corners." Id. at 843.

As noted above, unlike the plaintiffs in Ross, Plaintiff in this case has set forth detailed, specific itemizations of allegedly non-compliant conditions in the Parks. Furthermore, unlike Ross, which was decided on a motion for summary judgment, this case is still at the pleading stage. Defendants have cited no authority for their contention that Plaintiff is required to plead the specific locations within the Parks of the allegedly non-compliant conditions and precisely how these conditions are inaccessible, inadequate, or improper. In the absence of such authority, there is no basis to require Plaintiff to plead his Title II and Section 504 claims with such particularity. See Gilmore v. Miss. Coast Coliseum Comm'n, No. 1:12-cv-183-HSO-RHW, 2013 WL 1194706, at *4 (S.D. Miss. Mar. 22, 2013) (plaintiff not required to plead specific locations of alleged Title II and § 504 violations); see also Twombly, 550 U.S. at 570 ("[W]e do not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").

The district court's decision in Access Now, Inc. v. S. Fla. Stadium Corp., 161 F. Supp. 2d 1357 (S.D. Fla. 2001), cited by Defendants, is also inapposite. In that case, the plaintiffs alleged that operation of a sports

21

stadium violated Title III of the ADA, which bars discrimination in public accommodations operated by private entities. Id. at 1360-61. The court noted that existing facilities were not required to comply with accessibility standards applicable to new construction and alterations, but that deviation from such standards was relevant to determining whether an existing facility contained architectural barriers. Id. at 1368.  The court further noted that, at trial, a defendant might be able to rebut evidence that noncompliance impedes access "by showing that despite the technical noncompliance, the challenged accommodation in fact allows disabled persons effective access." Id. at 1368.

Citing this language, Defendants argue that "despite any alleged noncompliance with the 'specific measurements' in the implementing regulations, disabled persons such as Plaintiff still have effective access to the Parks, and thus the [First Amended Complaint] fails to state a claim." Defs.' Mem. of Law in Supp. of Mot. to Dismiss First Am. Compl. [25-1] at 21. However, the discussion in Access Now, even if otherwise applicable, concerned the ability of a defendant to present rebuttal evidence at trial, not minimum pleading requirements for a plaintiff to state a claim. Defendants may ultimately be able to show, either at trial or on a motion for summary

judgment, that the Parks satisfy ADA and RA requirements despite their non-compliance with accessibility standards, but at this stage of the litigation, Defendants' mere assertion that disabled individuals have effective access to the Parks does not establish that Plaintiff has failed to state a claim.

Finally, Defendants argue that the First Amended Complaint fails to set forth facts establishing a violation of the law because the implementing regulations Plaintiff cites apply only to new construction or alterations, and Plaintiff has not sufficiently alleged that any of the Parks' facilities have been altered or newly constructed so as to be subject to the regulations. Contrary to this contention, however, the First Amended Complaint does allege that the Parks have undergone renovations and construction after the relevant compliance date set out in Title II's implementing regulations. First Am. Compl. [24] ¶¶ 10, 13; 28 C.F.R. § 35.151(a)(1) & (b)(1).

Furthermore, even to the extent that the Parks are comprised of existing facilities, the accessibility standards set out in the regulations governing alterations and new construction may still serve as a guide in determining whether such facilities are readily accessible. Cf. Gathright-Dietrich v. Atlanta Landmarks, Inc., 435 F. Supp. 2d 1217, 1226 (N.D. Ga.

2005), aff'd, 452 F.3d 1269 (11th Cir. 2006) (under Title III, accessibility standards should be used as a guide in determining what is a barrier to access in an existing facility); Access Now, 161 F. Supp. 2d at 1368 (same). Thus, even though existing facilities are not required to comply with the accessibility standards, allegations that such facilities are non-compliant with these standards are still adequate to assert a plausible claim that "the service, program, or activity" offered by the Parks, "when viewed in its entirety," is not "readily accessible," as required by the governing regulations. 28 C.F.R. § 35.150(a).

Defendants argue that Plaintiff's factual allegations are insufficient because they permit the Court to "infer 'obvious alternative explanations' which suggest lawful conduct." Defs.' Mem. of Law in Supp. of Mot. to Dismiss First Am. Compl. [25-1] at 20 (quoting Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 682) (quoting Twombly, 550 U.S. at 567)). Specifically, with respect to existing facilities, Defendants point to the possibility that the Parks may be "readily accessible" despite the existence of excessive slopes and cracked pavement, or that the excessive slopes may be due to "the natural topography of the North Georgia mountains, such that any compliance measure would effect an

24

undue burden or impose a fundamental alteration in the nature of the Parks." Id. at 21-22 (citing 28 C.F.R. § 35.150(a)).   With respect to alterations, Defendants point out that the accessibility standards apply only if the alterations affect usability, that alterations must be readily accessible only to the maximum extent feasible, that departures from the accessibility standards are permitted, and  that some alterations might affect usability in some parts of the Parks but not others.   Defs.' Reply in Supp. of Mot. to Dismiss [29] at 11-12 (citing 28 C.F.R. § 35.151(b) & (c)).

Contrary to Defendants' argument, however, nothing in the First Amended Complaint supports an inference that the Parks are "readily accessible" despite the existence of conditions that allegedly hinder access, or that modification of these conditions would be an undue burden or fundamentally alter the nature of the Parks.   Nor are any facts alleged that would permit the Court to infer that any alterations do not affect usability, either in all or some portions of the Parks, or that such alterations are readily accessible to the maximum extent feasible, or that they are not required to comply with the accessibility standards.   Defendants' contentions in this regard represent defenses that they may assert and present evidence to support at the appropriate time.   See FED. R. CIV. P. 8(c) (burden on

defendant to "affirmatively state any avoidance or affirmative defense"). Plaintiff is not required to negate all such potential defenses in his complaint in order to state a plausible claim for relief.  See La Grasta v. First Union Sec. Inc., 358 F.3d 840, 845 (11th Cir. 2004) (plaintiff is not required to negate an affirmative defense in the complaint).

V.    Injunctive Relief

Defendants contend that Plaintiff cannot obtain the injunctive relief he seeks.  Their argument has two parts:  first, that Defendants are entitled to Eleventh Amendment immunity; and, second, that the Ex Parte Young[6] exception for suits seeking prospective injunctive relief against state officials does not apply in this case.  As discussed above, however, Plaintiff has adequately alleged that Defendants waived their Eleventh Amendment immunity with respect to his claims under § 504 of the RA by accepting federal funding.  As long as Plaintiff maintains a viable § 504 claim, the Court need not address whether, if Defendants had not waived their Eleventh Amendment immunity, Plaintiff could nonetheless obtain injunctive relief pursuant to the Ex Parte Young doctrine.  Therefore, the Court declines to decide at this time whether Plaintiff can obtain the injunctive relief he seeks

---

[6] 209 U.S. 123 (1908).

pursuant to <u>Ex Parte Young</u>.  If and when Defendants successfully challenge their alleged waiver of immunity under the RA, and if the Court then decides that Title II of the ADA does not validly abrogate Defendants' Eleventh Amendment immunity, the Court will address the applicability of the <u>Ex Parte Young</u> doctrine.

<u>Summary</u>

For the foregoing reasons, the Court DENIES Defendants' Motion to Dismiss Plaintiff's First Amended Complaint [25].

IT IS SO ORDERED, this ___6th___ day of September, 2013.


_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

27