UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

GARY GAYLOR,                          :
                                      :
         Plaintiff,                   :
                                      :        CIVIL ACTION NO.
v.                                    :
                                      :        2:11-CV-288-RWS
GEORGIA DEPARTMENT OF                 :
NATURAL RESOURCES, et al.,            :
                                      :
         Defendants.                  :

**ORDER**

        This action is before the Court on Plaintiff's Motion to Compel

Responses to Interrogatories and Requests for Production of Documents [68]

and Non-Party Carol Gaylor's Motion to Quash Subpoena and for Protective

Order [70].  The Court's rulings are set out below.[1]

Background

        Plaintiff Gary Gaylor filed this action against the Georgia Department

of Natural Resources ("GDNR") and Becky Kelley, in her official capacity as

the Director of GDNR's Parks, Recreation, and Historic Sites Division

---

[1] The Court denies Defendants' Motion for Hearing [81]. The Court will address Plaintiff's Motion in Limine to Exclude the Expert Testimony of Michael Palacio [92] and Plaintiff's Motion in Limine to Exclude the Expert Testimony of Mike Galifianakis [93] in a separate Order.

("PRHSD"),[2] asserting claims for alleged disability discrimination in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794.

Plaintiff alleges that Defendants own, operate, and/or administer Unicoi State Park and Lodge near Helen, Georgia, and Vogel State Park near Blairsville, Georgia (the "Parks"). First Am. Compl. [24] ¶¶ 5-16. Plaintiff further alleges that he suffers from multiple sclerosis, which impairs his ability to walk and requires him to use a cane or a wheelchair; that he has visited the Parks and plans on visiting them in the future, but that during his visits he has faced difficulties accessing the goods, services, programs, and activities within the Parks due to architectural barriers; and that he fears he will continue to face these barriers in the future. Id. ¶¶ 4, 17-21.

Plaintiff seeks (1) a declaration that the goods, services, programs and activities owned, operated and/or administered by Defendants are in violation of the ADA and RA; (2) an injunction prohibiting Defendants from continuing their discriminatory practices and directing them to alter and modify the subject premises, goods, services, activities, programs and accommodations

_____

[2] The PRHSD was also initially named as a defendant but was later dismissed by agreement of the parties. Order of Dec. 26, 2013 [63].

2

as appropriate to comply with the ADA and RA; (3) an award of reasonable attorneys' fees, costs and litigation expenses; and (4) an award of compensatory damages. *Id.*, Prayer for Relief.

Discussion

I.    Motion to Compel

Plaintiff filed a motion seeking to compel Defendants to provide full responses to Interrogatory Nos. 4-8 of Plaintiff's First Set of Interrogatories to Defendant GDNR and Request Nos. 13-16, 18-23, and 26 of Plaintiff's First Set of Requests for the Production of Documents to Defendant GDNR and Defendant Kelley.[3] Defendants contend that the motion should be denied in its entirety because Plaintiff violated Fed. R. Civ. P. 37(a)(1) and Local Rule 37.1(A) by failing to (1) engage in a good faith effort to resolve the discovery disputes before filing the motion, (2) properly certify that such an effort was made, and (3) state in the motion all of the objections made by Defendants and their grounds. After reviewing the record, the Court finds that Plaintiff made a good faith effort to resolve the discovery disputes, that certification of such effort by local counsel was sufficient, and that Plaintiff's summaries

---

[3] Plaintiff has withdrawn his motion with respect to Request for Production No. 18. *See* Pl.'s Reply Br. [85] at 15.

3

of Defendants' lengthy and repetitive objections were reasonable and appropriate. Accordingly, the Court will address the merits of the motion, first considering the interrogatories at issue and then the requests for production of documents.

> A.    Interrogatories
>
> 1.    Interrogatory Nos. 4 and 5

In Interrogatory Nos. 4 and 5, Plaintiff asked GDNR (1) to identify the total amount of funding per year that it received from the federal government for the years 1992-present; and (2) for each year, to provide a description of each award of federal government funds, including the classification and identifying number of the funding, the source of the funding, and a description of how the funds were expended or are to be expended. GDNR objected that both interrogatories were overly broad because they were not limited to the two Parks at issue and to the areas of the Parks that Plaintiff actually visited or attempted to visit. Without waiving these objections, GDNR provided the requested information with regard to five funding grants received from the federal government for projects at Unicoi and Vogel.

In his motion to compel, Plaintiff argues that information regarding federal funding at non-Unicoi and non-Vogel parks bears directly upon

4

whether GDNR is subject to the RA as a recipient of federal financial assistance.[4]  In response, GDNR argues that the RA requires a showing that the specific program or activity with which plaintiff was involved received or directly benefitted from federal financial assistance at the time of the alleged discrimination.  Since plaintiff's allegations relate solely to difficulty accessing the programs and activities at Unicoi and Vogel, GDNR argues that information regarding federal financial assistance benefitting other parks and other divisions of GDNR is irrelevant.

The Court concludes that information regarding federal financial assistance benefitting all of GDNR's operations, not just Unicoi and Vogel, is relevant to Plaintiff's claims under the RA.  In support of its argument that only federal funding of Unicoi and Vogel is relevant, GDNR relies on the Eleventh Circuit's decision in *Doyle v. Univ. of Ala. in Birmingham*, 680 F.2d 1323 (11th Cir. 1982), and the former Fifth Circuit's decision in *Brown v. Sibley*, 650 F.2d 760 (5th Cir. Unit A July 1981).  In *Brown*, the court held that "it is not sufficient, for purposes of bringing a discrimination claim under

---

[4] The RA provides in pertinent part that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination *under any program or activity receiving Federal financial assistance* . . . ."  29 U.S.C. § 794(a) (emphasis added).

5

Section 504, simply to show that some aspect of the relevant overall entity or enterprise receives or has received some form of input from the federal fisc." 650 F.2d at 769.  Instead,  "[a] private plaintiff in a Section 504 case must show that the program or activity with which he or she was involved, or from which he or she was excluded, itself received or was directly benefited by federal financial assistance." *Id.* (footnotes omitted).  Relying on *Brown*, the court in *Doyle* reached the same conclusion.  *Doyle*, 680 F.2d at 1326-27.

Both of these decisions, however, pre-date the Civil Rights Restoration Act of 1987, Pub. L. No. 100-259, 102 Stat. 28 (1988), which amended the definition of "program or activity" under the RA to include "*all of the operations* of . . . a department, agency, special purpose district or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b)(1)(A) (emphasis added).  The Act was passed by Congress to "overturn" the Supreme Court's decisions in *Grove City College v. Bell*, 465 U.S. 555 (1984), and *Consol. Rail Corp. v. Darrone*, 465 U.S. 624 (1984), which, like *Doyle* and *Brown*, narrowly interpreted "program or activity" to mean only the specific parts of a recipient's operation that directly benefitted from federal financial assistance.  *See Haybarger v. Lawrence Cnty. Adult Probation and Parole*, 551 F.3d 193, 199-200 (3rd Cir. 2008).  Other courts have recognized that the

6

Act also effectively overturned *Brown*. *See Innovative Health Sys. v. City of White Plains*, 931 F. Supp. 222, 234 (S.D. N.Y. 1996); *Corrales v. Moreno Valley Unified Sch. Dist.*, No. 08-00040-AC, 2010 WL 2384599, at *9 (C.D. Cal. June 10, 2010). By logical extension, *Doyle*, which relied on *Brown*, was overturned as well.

GDNR also relies on the Eleventh Circuit's unpublished opinion in *Muckle v. UNCF*, 420 Fed. App'x 916 (11th Cir. 2011).[5] In *Muckle*, the court held that the district court erred in dismissing the plaintiff's RA claim because he had failed to allege that the defendants received federal financial assistance. *Id.* at 918. Citing *Doyle*, the court stated that a more carefully drafted complaint might state a claim if the plaintiff could show that the scholarship program from which he had allegedly been excluded because of a disability received federal financial assistance. *Id.* The court did not cite the Civil Rights Restoration Act of 1987 or discuss its effect on the continued viability of *Doyle*, nor did it cite any of the cases holding that the Act had effectively overturned *Brown*, on which *Doyle* relied.[6] Accordingly, *Muckle*

---

[5] Unpublished opinions are not binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

[6] Similarly, this Court's decision in *Rylee v. Chapman*, No. 2:06-CV-0158-
(continued...)

does not persuade this Court that *Brown* and *Doyle* remain good law in this circuit.[7]  The Court concludes that information regarding GDNR's receipt of federal financial assistance benefitting all of its operations, not just Unicoi and Vogel, is relevant to the issue of whether it is subject to the RA in this case.

Apart from relevance, GDNR objected that these interrogatories were overly broad and unduly burdensome because they cover a 21-year period and would require manual file reviews at each division level for this entire time period.  According to GDNR, the manual file review for the requested information relating only to the 63 non-Unicoi and non-Vogel parks and historic sites operated by the PRHSD would require, at a minimum, the review of approximately 71 grant files that include approximately 109 separate projects, some of which contain more than 200 pages of

_____

[6](...continued)
RWS, 2008 WL 3538559, at *4 (N.D. Ga. Aug. 11, 2008), also cited by GDNR, did not discuss the Civil Rights Restoration Act of 1987 or subsequent caselaw calling into question the continued viability of *Brown* and *Doyle*.

[7] Two recent decisions from the Northern District of Alabama cite *Muckle* as indicating that the Eleventh Circuit intends to abide by the principles set forth in *Brown* and *Doyle*. *See McBay v. City of Decatur, Ala.*, No. CV-11-8-3272-NE, 2014 WL 1513344, at *7 n.25 (N.D. Ala. Apr. 11, 2014); *Mason v. City of Huntsville, Ala.*, No. CV-10-S-02794-NE, 2012 WL 4815518, at *5 (N.D. Ala. Oct. 10, 2012).  For the reasons explained above, this Court respectfully disagrees.

AO 72A
(Rev.8/82)

documentation.  Additionally, GDNR states that providing the requested information on a department-wide basis would require a manual file review of documents housed at the Georgia Archives.  GDNR objects to searching these documents for the requested information because it contends they are equally as available to Plaintiff as they are to GDNR.

These objections have been rendered largely moot by Plaintiff's agreement to limit his request for additional information to non-Unicoi and non-Vogel parks and historic sites.  *See* Pl.'s Reply Br. [85] at 6. Consequently, a department-wide file review will not be necessary.  As noted above, according to GDNR, responding to the interrogatories just with regard to other parks and historic sites will require a manual file review of approximately 71 grant files, some of which contain more than 200 pages of documentation.  GDNR has made no showing that such a limited review would be unduly burdensome.  Therefore, the Court grants Plaintiff's motion to compel as to Interrogatory Nos. 4 and 5 and orders GDNR to supplement its responses to these interrogatories to provide information regarding federal funding received by non-Unicoi and non-Vogel parks and historic sites operated by the PRHSD.

9

2.      Interrogatory Nos. 6 and 7

In Interrogatory Nos. 6 and 7, Plaintiff asked GDNR (1) to identify the total amount of funding per year that it received from the State government for the years 1992-present; and (2) for each year, to provide a description of each award of State government funds, including the classification and identifying number of the funding, the source of the funding, and a description of how the funds were expended or are to be expended. GDNR asserted essentially the same objections to these interrogatories as it did to Interrogatory Nos. 4 and 5. Without waiving these objections, GDNR provided information regarding State funding received by Unicoi and Vogel.

In his motion to compel, Plaintiff argues that the requested information regarding State funding is relevant for two reasons. First, Plaintiff argues that discovery relating to GDNR's financial resources and how those resources are allocated is relevant to GDNR's affirmative defense that the Parks comply with all accessibility requirements unless compliance would result in an undue financial or administrative burden. Second, Plaintiff contends that State funding is also relevant to Plaintiff's RA claims because State agencies that receive federal funding indirectly through State government are subject to the RA.

10

In response, GDNR does not dispute that general financial information is relevant to its undue burden defense. Accordingly, in response to Plaintiff's motion to compel, GDNR provided Plaintiff with the operating budgets for GDNR and the PRHSD for the years 2010 through 2014. In his reply brief, Plaintiff makes no argument that this information requires any further supplementation.

With regard to indirect federal funding, GDNR again argues that, as with direct federal funding, such funding is only relevant if it benefits a specific program or activity to which Plaintiff alleges he was denied access. For the reasons discussed above, the Court concludes that indirect federal funding of all of GDNR's operations, not just Unicoi and Vogel, is relevant. GDNR also argues that responding to these interrogatories on a department-wide basis for a 21-year period would be unduly burdensome. Plaintiff has not addressed this objection. The Court concludes that, as with Interrogatory Nos. 4 and 5, GDNR's response to these interrogatories should be limited to funding of parks and historic sites within the PRHSD. Therefore, the Court grants Plaintiff's motion to compel as to Interrogatory Nos. 6 and 7 and orders GDNR to supplement its responses to these interrogatories to provide

11

information regarding any indirect federal funding of other parks and historic sites within the PRHSD.

### 3.    Interrogatory No. 8

Interrogatory No. 8 asked GDNR to identify all sources of federal or State government funding relating to the design, construction, and/or renovation of Unicoi and Vogel, or any service, program, and/or activity provided at  Unicoi and Vogel, for the last five years; and to provide certain specified information regarding any such funding.  GDNR objected because Plaintiff failed to limit his inquiry to areas of the Parks that he actually visited or attempted to visit.  Without waiving this objection, GDNR stated that there had been no direct federal funding of Unicoi or Vogel during the last five years and referred to its response to Interrogatory No. 6 with regard to State government funding of the Parks.

In his motion to compel, Plaintiff argues that federal funding at non-Unicoi and non-Vogel sites is relevant to whether the RA applies in this case, and State funding is relevant as to Defendant's status as a potential indirect recipient of federal funds.  This argument, however, ignores the fact that Interrogatory No. 8 does not seek information regarding non-Unicoi and non-Vogel sites.  Plaintiff also ignores the fact that, despite its objection, GDNR

provided a full response to this interrogatory.  Therefore, the Court denies Plaintiff's motion as to Interrogatory No. 8.

      B.     Requests for Production of Documents

          1.     Request for Production ("RPD") Nos. 14 and 15

RPD Nos. 14 and 15 sought production of documents reflecting federal and State government funding, respectively, relating to parks and/or recreational services since 2008.  Defendants objected to both requests on the ground that they were not limited to Unicoi and Vogel.  As discussed above, both direct and indirect federal funding of all of GDNR's operations is relevant to Plaintiff's RA claims.  Therefore, the Court grants Plaintiff's motion to compel as to RPD Nos. 14 and 15 and orders Defendants to produce responsive documents relating to non-Unicoi and non-Vogel parks and historic sites.

          2.     RPD No. 16

RPD No. 16 sought production of "[a]ll Documents reflecting contracts and/or agreements with the Federal Government" wherein Defendants agreed to comply with civil rights legislation, federal law, and/or the ADA. Defendants objected to the request, in part, on the ground that it was not limited to contracts relating specifically to Unicoi and Vogel. Defendants also

AO 72A
(Rev.8/82)

objected that the request was overly broad and unduly burdensome because it was unlimited in time or subject.  In his motion to compel, Plaintiff cites evidence that contracts signed by GDNR when accepting federal funding often mandate its compliance with federal laws against discrimination in *all* of its operations regardless of whether the funding relates to those operations.

The Court concludes that contracts between GDNR and the federal government that require GDNR to comply with federal anti-discrimination laws in all of its operations are relevant and discoverable.  The parties should confer in an effort to reach agreement as to a reasonable time period for which such documents should be produced.  Subject to such agreement, the Court grants Plaintiff's motion to compel as to RPD No. 16 and orders Defendants to produce any contracts between GDNR and the federal government that contain provisions requiring GDNR to comply with federal anti-discrimination laws in all of its operations.

3.    RPD Nos. 19, 21, and 22

RPD No. 19 sought production of "[a]ll email communications since 1990 relating to disability access, Title II of the Americans with Disabilities Act, and/or the Rehabilitation Act."  RPD Nos. 21 and 22 sought documents

relating to Defendants' efforts to comply with, and understanding of, the ADA and the RA, respectively.  Defendants objected to these requests on various grounds, including that they were not limited to documents relating to Unicoi and Vogel.  Nevertheless, Defendants conducted a search and produced a large number of documents responsive to these requests, including documents that were not specifically related to Unicoi and Vogel.  In his motion to compel, Plaintiff fails to specify how Defendants' responses to these requests were insufficient.   The Court agrees that non-Unicoi and non-Vogel documents are relevant and discoverable.  However, absent any showing by Plaintiff that Defendants failed to produce any non-Unicoi and non-Vogel documents responsive to these requests, the Court denies Plaintiff's motion to compel as to RPD Nos. 19, 21, and 22.  In light of this ruling, the Court need not address Defendants' other objections to these requests.

4.     RPD No. 26

RPD No. 26 sought production of "[a]ll documents relating to funds allocated for accessibility issues since 2008."  Defendants objected that this request was overly broad and unduly burdensome in that it was unlimited in time and subject matter and was not limited to the areas of Unicoi and Vogel that Plaintiff actually visited or tried to visit.  Defendants also objected that

15

this request was duplicative of a number of Plaintiff's other document requests. In his motion to compel, Plaintiff argues that documents related to funding for accessibility at non-Unicoi and non-Vogel sites is relevant and discoverable. For the reasons discussed above, the Court agrees. In addition, the Court finds that the request is reasonably limited as to both time and subject matter and is not duplicative of any of Plaintiff's other document requests. Therefore, the Court overrules Defendants' other objections, grants Plaintiff's motion to compel as to RPD No. 26, and orders Defendants to produce documents responsive to this request that relate to non-Unicoi and non-Vogel parks and historic sites operated by the PRHSD.

5.     Documents Housed at the Georgia Archives

Defendants objected to producing documents responsive to a number of Plaintiff's document requests on the ground that the documents were housed at the Georgia Archives and were therefore "equally available to Plaintiff as they are to Defendants." Defs.' Resp. to RPD Nos. 13, 15, 18, 20, 21, 22, and 23. In his motion to compel, Plaintiff argues that Defendants should be required to produce responsive documents housed at the Georgia Archives because they have a legal right to obtain the documents and the burden of locating responsive documents will be significantly less for

16

Defendants than for Plaintiff because Defendants are in a superior position to know what responsive documents are housed there and how to locate them. In response, Defendants do not dispute that they have the legal right to obtain documents housed at the Georgia Archives. Instead, they contend that they should not be required to do so because Plaintiff can just as easily obtain the documents directly from the Georgia Archives himself.

The Court concludes that Defendants must produce any responsive documents that are housed at the Georgia Archives. Parties responding to a request for production of documents must produce all documents within their "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "Control is defined not only as possession, but as the legal right to obtain the documents requested upon demand." *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984). Defendants do not dispute that they have the legal right to obtain documents housed at the Georgia Archives upon demand.

Parties must produce documents within their possession, custody, or control unless the documents "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Defendants have made no showing that it would be more convenient, less burdensome, or less expensive for Plaintiff to obtain

responsive documents from the Georgia Archives than for Defendants to do so. On the contrary, since the documents were originally in the possession of Defendants before being deposited in the Georgia Archives, Defendants are presumably in a better position to know which documents may be responsive to Plaintiff's requests and where they may be located. Therefore, the Court grants Plaintiff's motion to compel with respect to documents responsive to his requests for production that are housed at the Georgia Archives and orders Defendants to produce any such documents.

II.     Motion to Quash Subpoena and for Protective Order

Defendants served a deposition subpoena on Plaintiff's wife, Carol Gaylor. Mrs. Gaylor has filed a motion to quash the subpoena and for a protective order. In support of her motion, Mrs. Gaylor argues that (1) any potentially relevant information she could provide is available from a more convenient and less burdensome source, namely, Plaintiff himself; (2) due to medical conditions from which she suffers, including herniated disks in her neck and back and fibromyalgia, a deposition would subject her to heightened physical strain and constitute an undue burden; and (3) her deposition would be unlikely to produce relevant non-cumulative information because the federal common law marital confidential communications privilege would

prevent her from testifying about any confidential conversations she had with Plaintiff.   In the alternative, Mrs. Gaylor asks the Court to require that Defendants take her deposition by written questions rather than oral examination, compensate her at the rate of $50/hour for time spent in connection with the deposition, and pay all her expenses related to the deposition, including reasonable attorneys' fees; and that all communications between her and Plaintiff been deemed privileged.

In response, Defendants argue that Mrs. Gaylor's testimony is relevant because she accompanied Plaintiff on his visits to the Parks and can relate her own observations of the conditions there, Plaintiff's activities, and the effect of any barriers Plaintiff encountered.  Mrs. Gaylor's testimony would not be cumulative, Defendants argue, because she may be able to recall certain details of the visits that Plaintiff has stated he cannot remember. Defendants contend that Mrs. Gaylor has failed to show that sitting for a deposition would impose any undue burden on her.  Defendants question the applicability of the marital confidential communications privilege in a civil case; even assuming it applies, Defendants argue it would not preclude them from questioning Mrs. Gaylor regarding her own observations of the Parks, Plaintiff's activities, and the effects of any alleged barriers encountered by

Plaintiff.  Finally, Defendants contend there is no justification for limiting them to taking Mrs. Gaylor's deposition on written questions rather than oral examination, requiring them to compensate Mrs. Gaylor beyond the statutorily required witness fee and mileage, or determining in advance that all communications between Mrs. Gaylor and Plaintiff are privileged.

The Court agrees with Defendants.  Mrs. Gaylor has failed to show that her deposition testimony would be unreasonably cumulative or duplicative or that sitting for a deposition would impose an undue burden.  Even assuming the marital communications privilege applies in this case, Mrs. Gaylor may have knowledge of relevant information that is not subject to the privilege. Finally, there is no reason for the Court to require Defendants to take Mrs. Gaylor's deposition on written questions rather than on oral examination or to compensate Mrs. Gaylor beyond the statutorily required witness fee and mileage or to rule in advance on any question of privilege.  Therefore, the Court denies Mrs. Gaylor's motion to quash the subpoena and for a protective order as well as her alternative request for modification of the subpoena.

Summary

For the foregoing reasons, the Court DENIES Defendants' Motion for Hearing [81], GRANTS IN PART AND DENIES IN PART Plaintiff's Motion

AO 72A
(Rev.8/82)

to Compel Responses to Interrogatories and Requests for Production of Documents [68], and DENIES Non-Party Carol Gaylor's Motion to Quash Subpoena and for Protective Order [70].  In accordance with the Court's Order of March 20, 2014, discovery is extended for sixty (60) days from the date of entry of this order to allow Defendants time to schedule and take Mrs. Gaylor's deposition and to provide Plaintiff the supplemental discovery required by this order.  Dispositive motions are due thirty (30) days after the close of the extended discovery period.

IT IS SO ORDERED, this   25th   day of August, 2014.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

21