UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

GARY GAYLOR,                      :
                                  :
        Plaintiff,                :
                                  :        CIVIL ACTION NO.
v.                                :
                                  :        2:11-CV-288-RWS
GEORGIA DEPARTMENT OF             :
NATURAL RESOURCES, et al.,        :
                                  :
        Defendants.               :

## ORDER

This action is before the Court on Plaintiff's Motion in Limine to Exclude the Expert Testimony of Michael Palacio [92] and Plaintiff's Motion in Limine to Exclude the Expert Testimony of Mike Galifianakis [93]. The Court's rulings are set out below.

Background

Plaintiff Gary Gaylor asserts claims under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794, for alleged disability discrimination at Unicoi State Park and Lodge near Helen, Georgia, and Vogel State Park near Blairsville, Georgia (the "Parks"). Defendants are the

AO 72A
(Rev.8/82)

Georgia Department of Natural Resources ("GDNR") and Becky Kelley, in her official capacity as Director of GDNR's Parks, Recreation, and Historic Sites Division.

Plaintiff alleges that his ability to walk is impaired by multiple sclerosis, which requires him to use a cane or a wheelchair, and that he has had difficulty accessing the goods, services, programs, and activities at the Parks due to architectural barriers. Specifically, Plaintiff alleges that on his visits to the Parks he encountered the following barriers to access, each of which violates applicable federal regulations: (1) inaccessible parking due to excessive slopes, lack of mounted signage, lack of proper access aisles, inadequate dimensions, and cracked pavement; (2) inaccessible paths of travel due to excessive slopes, abrupt changes in level, and lack of proper handrails; (3) inaccessible curb cuts due to the presence of vertical changes in level or "lips" and excessive slopes; (4) inaccessible ramps due to lack of proper handrails and excessive slopes; (5) inaccessible restrooms due to lack of accessible routes to enter the restrooms, lack of proper door hardware, lack of grab bars in water closets, and lack of flush valves on correct side; (6) inaccessible picnic and seating areas due to lack of accessible routes and inaccessible dimensions; and (7) inaccessible primary function areas such as

2

beaches, trails, lakeside activities, guest services, theaters, and seating due to lack of accessible routes, ramps, and proper handrails.

Plaintiff retained Nicholas Heybeck as an expert witness. Mr. Heybeck is a licensed professional engineer and registered accessibility specialist who is also experienced and has received training with respect to cost estimation. In November 2013, Mr. Heybeck inspected the Parks and took numerous measurements and photographs. In December 2013, Mr. Heybeck produced a report for each Park in which he identified property components that, in his opinion, do not comply with the 1991 ADA Standards for Accessible Design, the 1997 Uniform Federal Accessibility Standards, and the 2010 ADA Standards for Accessible Design. For each property component, Mr. Heybeck provided (1) the location and precise measurements of the component, (2) the applicable regulations, (3) an explanation of how the component failed to satisfy the regulations, (4) photographic evidence, (4) a recommendation for barrier removal, and (5) a line-item estimated cost for the barrier removal project. In all, Mr. Heybeck identified 148 barriers at Unicoi and 58 barriers at Vogel. He estimated the cost of removing the barriers at Unicoi to be $708,862 and the cost of removing the barriers at Vogel to be $399,952, for a total barrier removal cost of $1,108,814.

3

In January 2014, Defendants produced the reports of two rebuttal experts: Michael D. Palacio and Mike Galifianakis. Mr. Palacio, a Certified Professional Estimator, critiqued Mr. Heybeck's estimates of barrier removal costs. Mr. Galifianakis, an attorney, opined that Mr. Heybeck failed to apply the appropriate Title II program accessibility standard, and that the Parks were in compliance with that standard. Plaintiff has moved to exclude the testimony of both experts.

Discussion

I.   Legal Standard

The admission of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

4

AO 72A
(Rev.8/82)

The trial court, as the gatekeeper, must determine that the testimony is "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993) (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)).  The trial court must also "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).  The Eleventh Circuit has synthesized the existing rules into a three-part inquiry:

> Expert testimony may be admitted into evidence if:  (1) the expert is qualified to testify competently regarding the matter he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (footnote and citations omitted).

II.     Motion to Exclude the Testimony of Michael D. Palacio

Michael D. Palacio is a Certified Professional Estimator with over 18 years of experience in construction cost estimating.    In his report, Mr.

5

Palacio states that he has "both global and specific concerns" regarding the "accuracy and credibility" of Mr. Heybeck's cost estimates for recommended barrier removal projects.  Palacio Report [92-2] at 1.  Mr. Palacio's specific concerns relate to nine of the barriers Mr. Heybeck identified at Unicoi and seven of the barriers he identified at Vogel.  *Id.* at 6-10.  As to each of these barriers, Mr. Palacio explains the shortcomings of Mr. Heybeck's estimates and calculates a "more realistic probable cost."  *Id.* at 1.  Mr. Palacio's global concerns are that (1) a number of Mr. Heybeck's estimates did not take into consideration the full scope or level of complexity of the removal project; (2) Mr. Heybeck relied on the RSMeans construction cost estimating publication, which does not produce accurate cost information when used by someone with little or no professional estimating experience to estimate the cost of small projects; and (3) Mr. Heybeck failed to include costs for a general contractor on projects spanning a number of trades, input and fees from an architect and/or engineer for a number of the projects, and a construction contingency to account for unforeseen conditions, market fluctuations, unanticipated complexities, etc.  *Id.* at 1-2.

Plaintiff argues that Mr. Palacio's opinions should be excluded in whole or in part because (1) his report does not specifically identify each barrier to

6

which his "global concerns" apply; (2) his opinions on barrier removal costs are not relevant to any issue in the case; (3) he is not qualified to testify regarding the scope of work required or what fees an architect or engineer might charge; (4) his opinions on scope of work and professional fees are unreliable; (5) his opinion regarding construction contingency costs is wrong; (6) his opinions regarding estimating the costs of small projects are based on a misunderstanding; and (7) his opinions regarding unit pricing are not based on any objective data. For the following reasons, the Court finds all of these arguments without merit.

First, Plaintiff argues that Mr. Palacio's report improperly fails to identify all the barriers to which his "global concerns" apply. A testifying expert's report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). The purpose of this requirement is so "opposing parties have a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Id.* (advisory committee notes to 1993 amendments). The Court finds that Mr. Palacio's report satisfies this requirement.

AO 72A
(Rev.8/82)

Next, Plaintiff argues that Mr. Palacio's opinions regarding barrier removal costs are irrelevant because Defendants cannot assert an undue burden defense to any of Plaintiff's claims.  For purposes of the current motion, it is sufficient to note that Mr. Heybeck included estimates of barrier removal costs in his report.  Unless and until Plaintiff stipulates that he does not intend to offer Mr. Heybeck's estimates in evidence, Defendants are entitled to present expert testimony rebutting the accuracy and credibility of those estimates.

Plaintiff argues that Mr. Palacio is not qualified to testify regarding scope of work or professional fees required for barrier removal projects .  Mr. Palacio has a bachelor's degree in architecture from the Geogia Institute of Technology, has been a Certified Professional Estimator since 2001, has been President of his own construction cost and value management firm since 2006, and has extensive experience working on construction projects in parks and other outdoor spaces.  Palacio Report [92-2] at 3-4.  Mr. Palacio testified that he not only provides expert advice regarding construction costs but also makes scope of work recommendations to keep a project on budget.  Palacio Dep. [94-3] at 8:10-13, 13:20-14:4, 14:19-22.  Contrary to Plaintiff's argument, Mr. Palacio did not testify that he was not qualified to make such

recommendations, only that he was not qualified "to lead the management of the project[s]." *Id.* at 39:20-40:11.  With regard to estimates of architecture and engineering fees, contrary to Plaintiff's contention, it is not necessary for Mr. Palacio to be a licensed architect or engineer to provide estimates of such fees on construction projects.  The Court concludes that Mr. Palacio is qualified by education and experience to render opinions on both the scope of work and professional fees required to complete the recommended barrier removal projects.

Plaintiff argues that Mr. Palacio's scope of work opinions are unreliable because he considered aesthetics in forming his opinions.  Plaintiff contends that aesthetic concerns are irrelevant to an undue burden defense, and that Mr. Palacio based his opinions on the "assumption that non-disabled persons have a greater right to aesthetic access than disabled persons have to physical access."  Mem. in Support of Pl.'s Mot. in Limine [92-1] at 17. Contrary to Plaintiff's argument, the record shows that Mr. Palacio did not base his opinions on any assumptions about the rights of non-disabled persons versus disabled persons but on industry standards requiring that alterations be consistent with original design intent.  Palacio Dep. [94-3] at 73:4-11;  92:23-93:10;  96:22-97:1.    Plaintiff's legal argument about the

relevance of aesthetic concerns to an undue burden defense has nothing to do with whether Mr. Palacio reliably applied industry standards to the recommended barrier removal projects.

Plaintiff argues that Mr. Palacio's opinions regarding architecture and engineering fees are unreliable because they are speculative and contradictory. The Court's review of Mr. Palacio's report and deposition testimony does not support this contention. Contrary to Plaintiff's argument, Mr. Palacio's testimony that he did not need "outside input" to formulate his cost estimates does not contradict his opinion that execution of some of the recommended projects would require the services of an architect and/or engineer. Palacio Dep. [94-3] at 38:5-12. Nor is Mr. Palacio's opinion contradicted by his testimony that he would not need the services of an architect to estimate the cost of a hypothetical project to repave and restripe a parking lot, although the owner might need an architect to design the project and prepare drawings in order to obtain a permit. *Id.* at 23:11-24:6. Likewise, Mr. Palacio's estimate of the architectural fees his firm might charge in connection with a hypothetical project to add three accessible parking spaces to a pre-existing parking lot is not inconsistent with his estimate of both architecture and engineering fees for a recommended Unicoi

10

project that he found would include demolishing and replacing an elevated concrete structure.  *Id.* at 27:1-28:10; 113:6-115:11; Palacio Report [92-2] at 6.

Plaintiff argues that Mr. Palacio's opinion that Mr. Heybeck omitted a construction cost contingency is simply "wrong" because Mr. Heybeck included such a contingency.  However, Mr. Palacio contends that Mr. Heybeck did not include a contingency designed to cover "*unforeseen* conditions" and "*unanticipated* complexities," as opposed to costs that should have been anticipated and included in the original scope of work.  Palacio Report [92-2] at 2 (emphasis added); Palacio Dep. [94-3] at 75:23-77:21. Plaintiff may dispute this contention, but Mr. Palacio's opinion is not clearly wrong.

Plaintiff argues that Mr. Palacio's criticisms of Mr. Heybeck's cost estimates for small projects are unreliable because he failed to recognize that the RSMeans publication on which Mr. Heybeck relied provides for a minimum labor/equipment charge.  But Mr. Palacio contends that despite providing for a minimum labor/equipment charge under certain circumstances, the RSMeans publication fails to take into account other considerations relevant to estimating the costs of the small barrier removal

11

projects recommended by Mr. Heybeck.  These considerations include the fact that the various projects are scattered throughout remote parks with difficult terrain, and that some of the projects require the work of more than one trade, which means that different crews must be mobilized and remobilized in order to complete the various tasks.  Palacio Dep. [94-3] at 58:15-19; 60:19-61:19; 80:24-81:13; 86:6-88:4.  Plaintiff may disagree that these are relevant considerations or that the RSMeans publication fails to take them into account, but Plaintiff has not shown that Mr. Palacio's opinions in this regard should be excluded as unreliable.

Finally, Plaintiff argues that all of Mr. Palacio's opinions regarding unit pricing should be disregarded because he does not rely on an objective database like the RSMeans publication but merely "a number he has in his head."  Mem. in Support of Pl.'s Mot. in Limine [92-1] at 25.  Contrary to Plaintiff's argument, the evidence shows that Mr. Palacio does not merely pull a number out of his head to estimate unit pricing but relies on the knowledge he has developed through many years of experience as a professional estimator.  Palacio Dep. [94-3] at 12:13-22; 13:4-9. According to Mr. Palacio, professional estimators generally rely on their knowledge and experience rather than publications like RSMeans because such publications

have limitations and can produce erroneous estimates if those limitations are not taken into account.  *Id.* at 40:15-21; 41:6-7; 41:19-42:4.  Plaintiff may disagree with Mr. Palacio's opinions in this regard, but he has failed to show that Mr. Palacio's estimates of unit pricing based on his learning and experience, in accordance with general industry practice, should be excluded as unreliable.

II.    Motion to Exclude the Testimony of Mike Galifianakis

Since graduating from Georgia State University School of Law in 1992, Manuel "Mike" Galifianakis has practiced primarily in the area of disability law.  He has held positions as a staff attorney with the Persons with Disabilities Law Center and as a technical information specialist with the Southeast Disability and Business Technical Assistance Center.  For the last 15 years, Mr. Galifianakis has served as State ADA Coordinator with the Georgia State Financing and Investment Commission.  As ADA Coordinator, Mr. Galifianakis develops and implements programs and activities to advance and monitor compliance by state agencies with the ADA.  Galifianakis Report [93-2] at 7-8.

Mr. Galifianakis was asked to "review the disability access to the programs, services, and activities at Unicoi and Vogel" and did so "in

AO 72A
(Rev.8/82)

accordance with his role as a technical resource on Americans with Disabilities Act . . . issues for state government agencies." *Id.* at 1. According to Mr. Galifianakis, GDNR is subject to Title II's mandate "that no qualified individual with a disability shall, because of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." *Id.* at 2 & n.1; *see* 42 U.S.C. § 12132. Citing ADA regulations, Mr. Galifianakis states that "[t]hose services, programs, or activities, when viewed in their entirety, must be readily accessible to and usable by individuals with disabilities, and no qualified individual can be excluded from participation because a public entity's facilities are inaccessible to or unusable by individuals with disabilities." *Id.* at 2 & n.2; *see* 28 C.F.R. §§ 35.149 & 35.150. This "program accessibility" standard, Mr. Galifianakis states, applies to GDNR. *Id.* at 2.

Mr. Galifianakis goes on to describe in general terms GDNR's and his office's "collaborative approach to ensure that the state park system, when viewed in its entirety, is accessible to park visitors with disabilities." *Id.* at 3. However, other than stating that $164,000 has been expended for access improvements at Unicoi and $46,000 for access improvements to Vogel, Mr. Galifianakis makes no reference to any facts specifically relating to the two

14

parks at issue in this case. *Id.* at 3-4. Nevertheless, he concludes that "[t]he programs, services, and activities at Unicoi and Vogel, when viewed in their entirety, meet the ADA Title II program accessibility standard." *Id.* at 6.

Mr. Galifianakis also opines that Plaintiff's expert, Mr. Heybeck, failed to apply "the correct program accessibility regulation in assessing disability access at Unicoi and Vogel" because (1) he did not consider alternatives to removing architectural barriers, such as providing program access at some but not all locations or relocating a program to an accessible location; and (2) he applied ADA design standards to outdoor developed areas to which the standards "do not translate well." *Id.* at 5-6. However, Mr. Galifianakis does not identify any specific program, service, or activity at Unicoi or Vogel that he contends could be or has been made accessible by means other than the removal of architectural barriers. Nor does he identify any specific barrier removal project recommended by Mr. Heybeck that he contends is based on an inappropriate application of ADA design standards to outdoor developed areas.

Plaintiff argues that Mr. Galifianakis' opinions should be excluded in their entirety because they (1) consist of impermissible legal conclusions, (2) are based on erroneous legal presumptions, and (3) are not based on

15

sufficient facts or data.  Plaintiff also contends that Mr. Galifianakis' report fails to identify the facts on which he relies.  The Court finds that Mr. Galifianakis' expert testimony must be excluded because it consists of impermissible legal conclusions.  In light of this finding, the Court need not address Plaintiff's other arguments.

Rule 704 of the Federal Rules of Evidence provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue."  FED. R. EVID. 704(a).  "An expert may not, however, merely tell the jury what result to reach."  *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (citing advisory committee notes to Rule 704).  Expert testimony is admissible when it will assist the trier of fact in understanding the evidence or determining a disputed issue of fact.  FED. R. EVID. 702(a).  But "[e]xpert testimony that consists of legal conclusions cannot properly assist the trier of fact in either respect" and is therefore inadmissible.  *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997) (citations omitted).  Thus, "it is not for an expert to communicate a legal standard – explicit or implicit – to the jury."  *Sackman v. Balfour Beatty Cmtys., LLC*, No. CV 113-066, 2014 WL 4415938, at *26 (S.D. Ga. Sept. 8, 2014) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1353-54 (6th Cir. 1994))

(internal quotation marks omitted).  "Although [a witness] may be qualified as an expert, he is not qualified to compete with the judge in the function of instructing the jury."  *Id.*

In drawing the line between an inadmissible legal conclusion and admissible assistance to the trier of fact, a court should "determine whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular.  If they do, exclusion is appropriate."  *Burkhart*, 112 F.3d at 1212 (quoting *Torres v. Cnty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985)).  In *Torres*, a Title VII case, the court held that an expert's testimony that the plaintiff "had been discriminated against because of her national origin" constituted an inadmissible legal conclusion because "it tracked the language of the applicable statute, and the term 'discrimination' has a specialized legal meaning that is more precise than the lay understanding of the term."  *Id.* On the other hand, "it would have been permissible for the expert to testify as to whether national origin motivated the hiring decision [because] [t]estimony phrased as such would address the factual issue of . . . intent without implicating any legal terminology."  *Id.* (internal quotation marks omitted).  "In other words, an expert may offer his opinion as to facts that, if

17

found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." *Id.* at 1212-13.

In this case, Mr. Galifianakis' opinions consist of impermissible legal conclusions rather than permissible factual opinions. Parroting the language of 28 C.F.R. § 35.150, Mr. Galifianakis opines that GDNR "has complied with its legal obligations under Title II because the programs, services, and activities at [Unicoi and Vogel], when viewed in their entirety, meet the Title II program accessibility standards." Galifianakis Report [93-2] at 2. Referencing the same regulation, Mr. Galifianakis opines that neither of Mr. Heybeck's reports "applies the correct program accessibility regulation in assessing disability access at Unicoi and Vogel." *Id.* at 5. Both opinions track the language of the regulation and use terms with specialized legal meaning. Nowhere in his report does Mr. Galifianakis offer any opinion as to facts relating to Unicoi or Vogel that, if found, would support a conclusion that GDNR has complied with, or that Mr. Heybeck failed to apply, the applicable legal standard. Instead, without reference to any facts relating to the two parks at issue, he simply concludes that the applicable legal standard has been satisfied, and that Mr. Heybeck failed to apply that standard.

18

The cases cited by Defendants in support of the admissibility of Mr. Galifianakis' testimony are inapposite.  In *United States v. Johnston*, 322 Fed. App'x 660 (11th Cir. 2009), the court held that a medical expert's opinion that prescriptions "were written without any legitimate medical purpose" was properly admitted because it concerned issues of fact, not law.  *Id.* at 667-68. In *Camacho v. Nationwide Mut. Ins. Co.*, No. 1:11-CV-3111-AT, 2014 U.S. Dist. LEXIS 50193 (N.D. Ga. Mar. 31, 2014), the court held that an expert could testify that an insurer had placed its own financial interests ahead of its insured's by unreasonably rejecting a settlement demand, but not that the insurer's conduct amounted to bad faith.  *Id.* at *57-*58.  In *Huddleston v. Herman & MacLean*, 640 F.2d 534 (5th Cir. Unit A Mar. 1981), *aff'd in part and rev'd in part on other grounds*, 459 U.S. 375 (1983), the court held that it was proper to admit the expert testimony of a lawyer concerning the interpretation given certain prospectus boilerplate language in the securities industry because it related to the factual issues of scienter and materiality. *Id.* at 552.  None of these cases in any way suggests that an expert may express an opinion as to the ultimate *legal* issue in a case, as Mr. Galifianakis seeks to do.

19

Finally, Defendants also cite *Huezo v. Los Angeles Cmty. Coll. Dist.*, No. CV 04-9772 MMM(JWJx), 2007 WL 7289347 (C.D. Cal. Feb. 27, 2007). In that case, the court granted the plaintiff's motion for partial summary judgment, relying in part on testimony by "a qualified expert in ADA accessibility compliance" that "defendant is not 'operating' its programs, services and activities in a manner that is 'readily accessible to and usable by' persons with mobility disabilities [as required by the ADA and § 504 of the Rehabilitation Act]." *Id.* at *2.   In *Huezo*, however, unlike this case, the expert identified specific facts supporting his opinions.  *Id.* at *2 & n.20 (expert identified 121 discrete barriers that interfered with plaintiff's access to defendant's campus).  Furthermore, in *Huezo*, no issue was raised as to whether the expert's testimony consisted of impermissible legal conclusions. *Id.* at *2 n.18 (discussing objections to expert's testimony).  In another case, where similar testimony by the same expert *was* challenged on this basis, the court excluded the testimony on the grounds that it consisted of inadmissible legal conclusions. *Mannick v. Kaiser Found. Health Plan, Inc.*, No. C 03-5905 PJH, 2006 WL 1626909, at *19 (N.D. Cal. Jun. 9, 2006).

AO 72A
(Rev.8/82)

Summary

For the foregoing reasons, the Court DENIES Plaintiff's Motion in Limine to Exclude the Expert Testimony of Michael Palacio [92] and GRANTS Plaintiff's Motion in Limine to Exclude the Expert Testimony of Mike Galifianakis [93].

IT IS SO ORDERED, this __12th__ day of September, 2014.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

21