UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION


CAROL GAYLOR, as surviving          :
spouse and successor of Gary        :
Gaylor,                             :
                                    :
        Plaintiff,                  :
                                    :          CIVIL ACTION NO.
v.                                  :
                                    :          2:11-CV-288-RWS
GEORGIA DEPARTMENT OF               :
NATURAL RESOURCES, et al.,          :
                                    :
        Defendants.                 :


**ORDER**

This action is before the Court on Defendants' Refiled Motion to

Exclude Certain Opinions of Plaintiff's Expert [145], Defendants' Refiled

Motion for Summary Judgment [146], and Plaintiff's Motion for Summary

Judgment [147].  For the following reasons, the Court concludes that plaintiff

lacks standing to prosecute this case because it is the property of her late

husband's bankruptcy estate and may only be prosecuted by the bankruptcy

trustee.  Therefore, the Court dismisses this action without prejudice and does

not address the merits of the pending motions.

## Background

Gary Gaylor filed this action on October 18, 2011, alleging disability discrimination at two of Georgia's state parks, Unicoi State Park and Lodge near Helen, Georgia, and Vogel State Park near Blairsville, Georgia (the "Parks").  Specifically, Mr. Gaylor alleged that his ability to walk was impaired by multiple sclerosis, requiring him to use a cane or a wheelchair, and that he had difficulty accessing the goods, services, programs, and activities at the Parks due to architectural barriers.  (Am. Compl., Dkt. [24] ¶¶ 4, 19.)  He asserted claims under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq., and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794, against the Georgia Department of Natural Resources and the Director of its Parks, Recreation, and Historic Sites Division.  Mr. Gaylor sought declaratory and injunctive relief as well as compensatory damages.  (Id., Prayer for Relief.)

On May 23, 2012, while this action was pending, Mr. Gaylor, through counsel, filed a voluntary Chapter 7 bankruptcy petition in the bankruptcy court for this district.  In re Gary William Gaylor, No. 12-21854-jrs (Bankr. N.D. Ga. May 23, 2012) (Dkt. [1]).  The statement of financial affairs form

2

attached to the petition indicated that there were no suits or administrative proceedings to which Mr. Gaylor had been a party within one year immediately preceding the filing of the bankruptcy case.  (Id.)  In addition, the schedules attached to the petition indicated that Mr. Gaylor had no equitable or future interests and no contingent and unliquidated claims of any kind.  Id.  Mr. Gaylor declared under penalty of perjury that he had read the statement and the attached schedules and that they were true and correct.  (Id.)

The bankruptcy court appointed Betty A. Nappier as trustee.  On June 22, 2012, Nappier filed a Report of No Distribution, stating that there was no property available for distribution from the estate over and above that exempted by law, and that no assets had been abandoned.  (Id. (Dkt. Entry on Jun. 22, 2012).)  She certified that the estate had been fully administered and requested to be discharged from any further duties as trustee.  (Id.) On August 28, 2012, the bankruptcy court entered an order approving the trustee's report of no distribution, granting Mr. Gaylor a discharge of his debts, closing the estate, and discharging the trustee.  (Id. (Dkt. [12]).)

Following discovery in this case, the parties filed cross-motions for summary judgment.  In their motion for summary judgment, Defendants

argued, *inter alia*, that Mr. Gaylor lacked standing because, when he filed for
bankruptcy, this lawsuit became property of the bankruptcy estate and, as a
result, only the bankruptcy trustee had standing to pursue it. In addition,
Defendants argued that Mr. Gaylor was judicially estopped from pursuing this
action because he failed to identify it as an asset in his bankruptcy case.

On April 16, 2015, while the motions in this case remained pending, Mr.
Gaylor, through counsel, filed a motion to reopen his bankruptcy case in order
to amend his statement of financial affairs to identify this action and his
schedules of personal property and exemptions to include his claim for
compensatory damages in this case. (Id. (Dkt. [14]).) On April 24, 2015, the
bankruptcy court entered an order granting the motion to reopen the case. (Id.
(Dkt. [17]).) On May 14, 2015, Mr. Gaylor, through counsel, amended his
Chapter 7 bankruptcy petition to identify this case, as well as other ADA
lawsuits filed by Mr. Gaylor, and to add to the attached schedules of personal
property and claimed exemptions the total amount of $250 that Mr. Gaylor
might receive as compensatory damages in this action. (Id. (Dkt. [19]).) On
May 26, 2015, the bankruptcy case was closed. (Id. (Docket Entry on May 26,
2015).) On the same date, Mr. Gaylor died.

4

Following Mr. Gaylor's death, Carol Gaylor, his surviving spouse, acknowledged that Mr. Gaylor's claims for declaratory and injunctive relief had been extinguished by his death and moved to be substituted as plaintiff in this action solely as to Mr. Gaylor's claim for damages.  The Court granted Ms. Gaylor's motion, and, pursuant to the Court's direction, the parties refiled their motions for summary judgment solely to address the remaining damages claim. In their refiled motion for summary judgment, Defendants again argue that, as a result of Mr. Gaylor's bankruptcy filing, plaintiff lacks standing to pursue this case and is judicially estopped from doing so.

For the following reasons, the Court concludes that this action remains the property of Mr. Gaylor's bankruptcy estate, and that the bankruptcy trustee therefore has exclusive standing to assert any claim for damages.  Because Ms. Gaylor lacks standing, this action must be dismissed without prejudice.  In light of this ruling, the Court does not reach the issue of judicial estoppel and does not otherwise address the merits of the parties' pending motions.

## Discussion

I.      **Legal Standard – Standing**

5

The Court's obligation "to examine its own jurisdiction, including whether the parties have standing, continues at each stage of the proceedings." Yellow Pages Photos, Inc. v. Ziplocal, LP, 795 F.3d 1255, 1265 (11th Cir. 2015) (quoting Cuban Am. Bar Ass'n, Inc. v. Christopher, 43 F.3d 1412, 1422 (11th Cir.1995) (internal quotations and modifications omitted)).

Article III of the Constitution confines the reach of federal jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2. This limitation "defines with respect to the Judicial Branch the idea of separation of powers on which the Federal Government is founded." Allen v. Wright, 468 U.S. 737, 750 (1984); see Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1990) (describing how standing interfaces with separation of powers and breadth of judicial power). These values are reflected in the three required elements for constitutional standing: (1) "an 'injury in fact'–a harm suffered by the plaintiff that is 'concrete' and 'actual or imminent, not 'conjectural' or 'hypothetical;' " (b) "causation–a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant;" and (3) "redressability–a likelihood that the requested relief will redress the alleged injury." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 102-04, (1998); see also Vt. Agency of

6

Natural Res. v. United States ex rel Stevens, 529 U.S. 765, 771 (2000); 31

Foster Children v. Bush, 329 F.3d 1255, 1263 (11th Cir. 2003).

In addition to these constitutional limits on standing, "prudential" limits

the prudential standing doctrine imposes "non-constitutional, non-

jurisdictional, policy-based limitations on the availability of judicial review."

Mulhall v. UNITE HERE Local 355, 618 F.3d 1279, 1290 (11th Cir. 2010)

(citing Am. Iron and Steel Inst. v. OSHA, 182 F.3d 1261, 1274 n. 10 (11th

Cir.1999)).   The prudential standing doctrine requires "(1) that the plaintiff's

complaint fall within the 'zone of interests' protected by the statute or

constitutional provision at issue; (2) that the complaint not require the court to

pass on abstract questions or generalized grievances better addressed by the

legislative branches; and (3) that the plaintiff assert his or her own legal rights

and interests rather than the legal rights and interests of third parties."  Id.

(citing Harris v. Evans, 20 F.3d 1118, 1121 (11th Cir.1994) (en banc)).  At

issue here is the third requirement.

To establish standing, a litigant ordinarily "must assert his own legal

rights and interests, and cannot rest his claim to relief on the legal rights or

interests of third parties." Yellow Pages Photos, 795 F.3d at 1265 (quoting

7

Warth v. Seldin, 422 U.S. 490, 499 (1975)).  Again, this "general prohibition

on a litigant's raising another person's legal rights" is a "prudential standing"

doctrine, "not derived from Article III." Lexmark Int'l, Inc. v. Static Control

Components, Inc., ─── U.S. ────, 134 S.Ct. 1377, 1386 (2014).

## II.    Analysis

When a debtor commences a bankruptcy case by filing a petition seeking

relief under the Bankruptcy Code, a bankruptcy estate is created that includes,

with limited exceptions not applicable here, "all legal or equitable interests of

the debtor in property as of the commencement of the case."  11 U.S.C. §

541(a)(1).  "Such property includes causes of action belonging to the debtor at

the commencement of the bankruptcy case."  Parker v. Wendy's Int'l, Inc., 365

F.3d 1268, 1272 (11th Cir. 2004) (citation omitted).  "Thus, a trustee, as the

representative of the bankruptcy estate, is the proper party in interest, and is the

only party with standing to prosecute actions belonging to the estate."  Id.

(citations omitted).

"Once an asset becomes part of the estate, all rights held by the debtor in

the asset are extinguished unless the asset is abandoned back to the debtor

pursuant to § 554 of the Bankruptcy Code."  Id. (citation omitted).  "At the

close of the bankruptcy case, property of the estate that is not abandoned under

§ 554 and that is not administered in the bankruptcy proceedings remains the

property of the estate."  Id. (footnote and citation omitted).  "Failure to list an

interest on a bankruptcy schedule leaves that interest in the bankruptcy estate."

Id. (citations omitted).

Applying these principles, it is clear that when Mr. Gaylor filed his

bankruptcy petition, this lawsuit became an asset of the bankruptcy estate.  At

that point, all rights held by Mr. Gaylor in the lawsuit were extinguished.

Nappier, as trustee, then became the real party in interest and the only party

with standing to prosecute the action.  The court's record of the bankruptcy

proceeding reflects no abandonment of any estate asset by Nappier.  To the

contrary, as noted above, her Report of No Distribution stated that no estate

assets had been abandoned.  Furthermore, because Mr. Gaylor did not identify

this lawsuit in his statement of financial affairs or include it in the schedules

attached to his petition, it remained part of the bankruptcy estate even after the

case was closed and Nappier was discharged as trustee.

Plaintiff argues that Nappier orally abandoned this lawsuit, thus allowing

Mr. Gaylor (and now Ms. Gaylor) to pursue it.  In support of this argument,

plaintiff relies on the declaration of Mr. Gaylor's bankruptcy attorney, Barbara Cole.  Cole states that she failed to disclose this lawsuit in the bankruptcy petition because of an unspecified "miscommunication" between her and Mr. Gaylor.  (Decl. of Barbara Cole, Dkt. [126-1] ¶ 5.)  After the error was brought to her attention, Cole states that she contacted the trustee while in court on August 12, 2012, and advised her that Mr. Gaylor had been party to a number of ADA cases seeking only injunctive relief, and that he was also a party to this suit, which "contained a damages count with the potential, if successful, to net Mr. Gaylor a small amount of compensatory and/or nominal damages in the hundreds of dollars."  (Id. ¶¶ 6-7.)  "That day," according to Cole, "the Trustee chose not to purse the claims but advised that she would contact me to discuss the issue further at a later date."  (Id. ¶ 8.)  Then, a few days after the bankruptcy court issued its Order discharging Mr. Gaylor and closing the case, Cole states that "the trustee called and advised that there was no need to amend Mr. Gaylor's petition as she did not intend to seek an interest in any claim for damages from Mr. Gaylor's pending ADA matters (and thus Mr. Gaylor was free to pursue his claims)."  (Id. ¶ 10.)

10

Plaintiff's argument fails for several reasons.  First, Cole's statement that Nappier told her she was abandoning this lawsuit, and that Mr. Gaylor was free to pursue his claims, is hearsay and therefore inadmissible.  Furthermore, as noted above, Cole's statement is directly contradicted by the bankruptcy court record, which indicates that no estate assets were abandoned.  Moreover, according to Cole's own testimony, Nappier did not inform her she was abandoning this lawsuit until several days *after* the bankruptcy court issued its Order discharging Mr. Gaylor and closing the estate.  That same Order also discharged Nappier as trustee.  Therefore, at the time Nappier purportedly informed Cole she was abandoning this lawsuit, the bankruptcy case was already closed and Nappier was no longer the trustee.  In addition, abandonment requires the trustee to give notice to the creditors and, if any object, the bankruptcy court must hold a hearing.  11 U.S.C. § 554(a); Fed. R. Bankr. P. 6007(a).  Neither occurred here.

This lawsuit could have reverted to Mr. Gaylor by operation of law if he had listed it on his schedule of assets and if the bankruptcy court had closed the case without disposing of it.  11 U.S.C. § 554(c).  But Mr. Gaylor did not list this case on his schedule of assets.  It is not enough that Cole orally informed

11

Nappier of the lawsuit before the bankruptcy case was closed.  "[I]n order for

property to be abandoned by operation of law pursuant to section 554(c), the

debtor must formally schedule the property before the close of the case.  It is

not enough that the trustee learns of the property through other means."

Vreugdenhill v. Navistar Int'l Transp. Corp., 950 F.2d 524, 526 (8th Cir. 1991).

Plaintiff also points out that, in April 2015, Mr. Gaylor amended his

bankruptcy petition to add this lawsuit and other ADA cases he had filed.

However, Mr. Gaylor's reopening of the bankruptcy case and amendment of his

petition to disclose this lawsuit does not cure the standing problem.  "Property

that is not correctly scheduled remains property of the estate forever, *until*

*administered or formally abandoned by the trustee*."  In re Upshur, 317 B.R.

446, 451-52 (Bankr. N.D. Ga. 2004) (emphasis added).  "Thus, in the case of

an omitted cause of action, . . . [the case] must be reopened *to permit the*

*trustee to deal with the property of the estate*."  Id. at 452 (emphasis added).  In

other words, "the solution to the [standing] problem is to require the parties to

return to bankruptcy court for a reopening of the case, *to appoint a trustee to*

*deal with the cause of action that is property of the estate*, and to allow the

trustee to sell the cause of action, prosecute it, settle it or abandon it to the

AO 72A
(Rev.8/82)

debtor if it is of no value to the estate." Id. (emphasis added).  That is not what

happened here.  The bankruptcy case was simply reopened, Mr. Gaylor

amended his petition to disclose this lawsuit, and then the case was

immediately closed again.[1]  The bankruptcy court did not reappoint Nappier as

trustee nor did it appoint another trustee to deal with the newly disclosed asset.

Thus, the lawsuit was never  administered or formally abandoned, and it

therefore remains the property of the bankruptcy estate.

Finally, plaintiff argues that in Barger v. City of Cartersville, Ga., 348

F.3d 1289 (11th Cir. 2003), the Eleventh Circuit rejected the contention that

only the bankruptcy trustee has standing to prosecute claims belonging to the

estate.  The court's holding, however, is to the contrary.  In Barger, the court

noted that even though the debtor's employment discrimination claims satisfied

the constitutional requirements for standing, there was an issue regarding the

real party in interest:  "The issue is really about who can litigate the claim, [the

debtor] or the Trustee."  348 F.3d at 1292.  This was an issue of prudential,

rather than constitutional, standing.  Addressing this issue, the court noted that

---

[1] Contrary to plaintiff's contention, the bankruptcy record does not show that Mr. Gaylor received a discharge on the amended petition.

AO 72A
(Rev.8/82)

"[b]ecause [the debtor] filed her bankruptcy petition after she filed her

discrimination claims her discrimination claims are the property of the

bankruptcy estate." Id. (citing 11 U.S.C. § 541(a)).  "Accordingly," the court

concluded, "the Trustee is the real party in interest and it has *exclusive standing*

to assert any discrimination claims." Id. (citation omitted) (emphasis added).

The same analysis applies in this case.  Because, for the reasons discussed

above, this lawsuit remains the property of the bankruptcy estate, the

bankruptcy trustee has "exclusive standing" to prosecute the case.

In Barger, the court was able to cure the standing problem by simply

substituting the trustee for the debtor on appeal pursuant to Federal Rule of

Civil Procedure 25(c).  Id. at 1292-93.  However, no such cure is available in

this case because there is, at present, no Chapter 7 trustee who can be

substituted for plaintiff.  As noted above, Nappier, the trustee previously

appointed to administer Mr. Gaylor's bankruptcy estate, was discharged from

that office by the bankruptcy court when it closed the case; and when the

bankruptcy court reopened the case, it did not reappoint Nappier as trustee or

appoint a new trustee before it again closed the case.  Consequently, the

procedural mechanisms of Rule 25(c) are not available to remedy plaintiff's

AO 72A
(Rev.8/82)

lack of standing to prosecute a lawsuit that still belongs to Mr. Gaylor's bankruptcy estate.  See Oswalt v. Sedgwick Claims Mgmt. Servs., Inc., Nos. 3:14-CV-956-WKW, 3:14-CV-968-WKW, 2015 WL 1565033, at *5 (M.D. Ala. Apr. 8, 2015) (where there was no Chapter 7 trustee to be substituted, Rule 25(c) could not be invoked to remedy debtor's lack of standing to pursue causes of action belonging to bankruptcy estate).  Therefore, the Court dismisses this action without prejudice and does not rule on the pending motions for summary judgment or the related motion to exclude certain opinions of plaintiff's expert.  See Webb v. City of Riverdale, 472 F. App'x 884, 884-85 (11th Cir. 2012) (affirming dismissal without prejudice of pre-petition lawsuit due to debtor's lack of standing and holding that district court should have refrained from ruling on the defendants' motion for summary judgment).

## Conclusion

For the foregoing reasons, this action is hereby **DISMISSED WITHOUT PREJUDICE** due to plaintiff's lack of standing to pursue claims that remain the property of the bankruptcy estate of Gary Gaylor, plaintiff's predecessor-in-interest.  Accordingly, Defendants' Refiled Motion to Exclude

Certain Opinions of Plaintiff's Expert [145], Defendants' Refiled Motion for

Summary Judgment [146], and Plaintiff's Motion for Summary Judgment [147]

are **DENIED AS MOOT**.

     **IT IS SO ORDERED**, this 23rd day of February, 2016.

_____

**RICHARD W. STORY**
United States District Judge

AO 72A
(Rev.8/82)